[No. D040584. Fourth Dist., Div. One. June 17, 2003.]

WINDHAM AT CARMEL MOUNTAIN RANCH ASSOCIATION,
Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PRESLEY COMPANIES et al., Real Parties in Interest.

**COUNSEL**

Epsten, Grinnell & Howell, Douglas W. Grinnell and Luis E. Ventura for Petitioner.

No appearance for Respondent.

Koeller, Nebeker, Carlson & Haluck, Keith D. Koeller and Joseph J. Cullen for Real Parties in Interest.

## Opinion

**McDONALD, J.**—Plaintiff Windham at Carmel Mountain Ranch Association, a California nonprofit mutual benefit corporation (Association), filed this petition for writ of mandate challenging the trial court's order sustaining without leave to amend the demurrer of defendants The Presley Companies, Presley Homes, Presley CMR, Inc., William Lyon Homes, Inc., Carmel Mountain Ranch, Home Capital Corporation, and Humboldt Financial Services Corporation (collectively Presley) to Association's breach of implied warranty cause of action alleged in its construction defect action against them. Association contends the trial court erred by concluding Association did not have the requisite privity of contract with Presley to state a cause of action for breach of implied warranty. Because Code of Civil Procedure section 383[1] provides Association with the requisite privity, we conclude the trial court erred and grant the petition.

### Factual and Procedural Background[2]

From about 1994 through 1997, Presley designed, developed, constructed, marketed and sold 120 residential condominiums in a common interest development known as Windham (Project).[3] Presley conveyed to each buyer of a Project condominium title to a living unit and an undivided fractional interest in the common areas appurtenant to the living unit. Presley formed Association to manage, maintain and repair Project's common areas. Presley filed a declaration of covenants, conditions and restrictions (CCR's) that: (1) provides Association with the authority and duty to maintain and repair the common areas; (2) provides Association with an easement over the common areas for the purpose of maintaining and repairing the common areas; (3) prohibits owners from constructing, reconstructing, or refurbishing any part of the common areas, except for exclusive use common areas, without Association's permission; and (4) provides that each owner must be a member of Association and pay assessments to Association for its repair of the common areas.

In February 2002 Association and Bernie Kastner, an owner of a Project condominium, filed a complaint against Presley, alleging causes of action for breach of implied warranty, strict liability, negligence and declaratory relief. The complaint generally alleges: "[P]ursuant to [section] 383 [Association] is the real party in interest to bring any and all causes of action concerning

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2]The factual summary in this opinion is based on the allegations in Association's complaint.

[3]Those 120 condominiums are now owned by about 200 individuals.

defective construction of the common areas and separate interests integrally related thereto." In the first cause of action for breach of implied warranty, Association alleges: "[Presley] impliedly warranted to [Association] that the condominiums and common areas of [Project] were designed and constructed in a reasonably workmanlike manner; that the condominiums and common areas of [Project] were constructed in accordance with the applicable plans and specifications; and that the condominiums and common areas of [Project] were designed and constructed in accordance with applicable building codes." It alleges that Presley breached those implied warranties, citing a litany of alleged defects in Project's building components and systems, landscaping, and other improvements. It further alleges those defects caused property damage, present health and safety risks to Project's residents, and interfere with the owners' use and enjoyment of their property.

Presley demurred to the first cause of action, arguing the complaint did not allege facts showing Association had the requisite privity of contract with Presley to maintain a cause of action against Presley for breach of implied warranty.[4] Association opposed the demurrer, arguing it had privity of contract with Presley under section 383 and case law. Presley replied to Association's opposition, arguing, inter alia, that section 383 allows Association to allege only *tort* causes of action for defective construction and breach of an implied warranty is a contract cause of action.

The trial court sustained without leave to amend Presley's demurrer to the first cause of action for breach of implied warranty, concluding Association did not allege facts showing it had the requisite privity of contract with Presley.[5]

Association filed this petition for writ of mandate, challenging the trial court's order. On August 22 we denied the petition.[6] On October 16 the California Supreme Court granted Association's petition for review and transferred the matter to us with directions to vacate our order denying the petition and issue an order to show cause. On November 4 we vacated our August 22 order, issued an order to show cause and scheduled oral argument.

---

[4]Presley also demurred to Kastner's separate cause of action for breach of implied warranty and the cause of action for declaratory relief alleged by Association and Kastner.

[5]The trial court overruled Presley's demurrers to the other causes of action.

[6]In our order denying the petition, we granted Association's request for judicial notice of certain orders and writ petitions filed in unrelated construction defect cases. We do not rely on those orders and petitions in deciding the instant matter.

DISCUSSION

I

*Demurrer Standard of Review*

■ "A demurrer tests the legal sufficiency of factual allegations in a complaint. [Citation.]" (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 42-43 [96 Cal.Rptr.2d 354].) In reviewing an order sustaining a demurrer to a cause of action, we exercise independent judgment in determining whether the complaint's factual allegations are sufficient to state a cause of action as a matter of law. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501 [82 Cal.Rptr.2d 368].) We treat the demurrer as admitting all material facts properly pleaded. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967 [9 Cal.Rptr.2d 92, 831 P.2d 317]; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) However, we do not assume the truth of contentions, deductions, or conclusions of fact or law. (*Aubry, supra*, at p. 967; *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) We also consider matters that may be judicially noticed. (*Rakestraw, supra*, at p. 43.) If the complaint does not allege facts sufficient to state a cause of action, a trial court nevertheless abuses its discretion by sustaining a demurrer *without leave to amend* if the plaintiff shows there is a reasonable possibility any defect can be cured by amendment of the complaint. (*Aubry, supra*, at p. 967; *Blank, supra*, at p. 318.)

II

*Implied Warranties and Privity of Contract Generally*

■ "A warranty is a contractual term concerning some aspect of the sale, such as title to the goods, or their quality or quantity. The warranty may be express [citation] or implied [citation]." (3 Witkin, Summary of Cal. Law (9th ed. 1987) Sales, § 50, p. 46.) Implied warranties are based on implied representations rather than on promises. (18 Williston on Contracts (4th ed. 2001) § 52:35, p. 178.) Implied warranties may be created by statute or case law. (See, e.g., Cal. U. Com. Code, §§ 2314, 2315; *Pollard v. Saxe & Yolles Dev. Co.* (1974) 12 Cal.3d 374, 380 [115 Cal.Rptr. 648, 525 P.2d 88].) *Pollard* established an implied warranty of reasonable workmanship in design and construction that applies to the sale of newly constructed real property. (*Id.* at pp. 378-380.) *Pollard* stated: "The doctrine of implied warranty in a sales contract is based on the actual and presumed knowledge of the seller, reliance on the seller's skill or judgment, and the ordinary

expectations of the parties. [Citation.] [¶] In the setting of the marketplace, the builder or seller of new construction—not unlike the manufacturer or merchandiser of personalty—makes implied representations, ordinarily indispensable to the sale, that the builder has used reasonable skill and judgment in constructing the building. On the other hand, the purchaser does not usually possess the knowledge of the builder and is unable to fully examine a completed house and its components without disturbing the finished product. Further, unlike the purchaser of an older building, he has no opportunity to observe how the building has withstood the passage of time. Thus he generally relies on those in a position to know the quality of the work to be sold, and his reliance is surely evident to the construction industry. [¶] Therefore, we conclude *builders and sellers of new construction should be held to what is impliedly represented—that the completed structure was designed and constructed in a reasonably workmanlike manner.*" (*Id.* at pp. 379-380, fn. omitted, italics added.)

"The general rule is that privity of contract [between the plaintiff and defendant] is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is [not] a party to the original sale. [Citations.]" (*Burr v. Sherwin Williams Co.* (1954) 42 Cal.2d 682, 695 [268 P.2d 1041].) "A demurrer is properly sustainable in an action predicated upon a breach of an implied warranty when lack of privity between plaintiff and defendant is disclosed on the fact of the complaint. [Citation.]" (*Anthony v. Kelsey-Hayes Co.* (1972) 25 Cal.App.3d 442, 448 [102 Cal.Rptr. 113].) Exceptions to the privity requirement have been established in cases involving foodstuffs, drugs and pesticides.[7] (*Anthony*, at p. 448; *Klein v. Duchess Sandwich Co., Ltd.* (1939) 14 Cal.2d 272, 283-284 [93 P.2d 799]; *Gottsdanker v. Cutter Laboratories* (1960) 182 Cal.App.2d 602, 607 [6 Cal.Rptr. 320, 79 A.L.R.2d 290]; *Arnold v. Dow Chemical Co.* (2001) 91 Cal.App.4th 698, 720-721 [110 Cal.Rptr.2d 722].) Furthermore, an expansion of the privity concept has been established for certain employees who are injured while using dangerous products purchased by their employers. (*Peterson v. Lamb Rubber Co.* (1960) 54 Cal.2d 339, 347-348 [5 Cal.Rptr. 863, 353 P.2d 575].) *Peterson* stated: "[T]he term 'privity' itself appears to be of uncertain origin and meaning and to have been developed by the courts and applied in various contexts. [Citations.] One of the customary definitions is that 'privity' denotes mutual or successive relationship to the same thing or right of property; it implies

---

[7]These exceptions generally were created by courts before the establishment of, and possibly as a precursor to, the doctrine of strict liability in tort. (*Greenman v. Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62-64 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]; 2 Dobbs, The Law of Torts (2001) Products Liability, § 353, pp. 972-974; Prosser & Keeton, Torts (5th ed. 1984) §§ 97-98, pp. 690-694.)

succession. [Citation.] Thus, in the present context, the employe[e] had the successive right to the possession and use of the grinding wheel handed over to him by his purchaser-employer, and, we believe, should fairly be considered to be in privity to the vendor-manufacturer with respect to the implied warranties of fitness for use and of merchantable quality upon which recovery is here sought." (*Ibid.*)

## III

### *Section 383*

██ Association contends the trial court erred by concluding that because there was no contract between Association and Presley and the common areas were not conveyed to Association by Presley, Association did not have the requisite privity of contract with Presley to state a cause of action against Presley for breach of implied warranty with respect to the common areas. Association argues section 383 statutorily provides the requisite privity.

### A

██ "We independently construe statutory law, as its interpretation is a question of law on which we are not bound by the trial court's analysis. [Citations.]" (*Lazar v. Hertz Corp., supra,* 69 Cal.App.4th at p. 1502.) ██ The fundamental goal of statutory construction is to ascertain the intent of the Legislature so as to effectuate the purpose of the statute. (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743 [110 Cal.Rptr.2d 828, 28 P.3d 876]; *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727].) " 'In construing a statute, our first task is to look to the language of the statute itself. [Citation.] When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms. [Citation.] [¶] Additionally, however, we must consider the [statutory language] in the context of the entire statute [citation] and the statutory scheme of which it is a part.' " (*Phelps v. Stostad* (1997) 16 Cal.4th 23, 32 [65 Cal.Rptr.2d 360, 939 P.2d 760].) "If the [statutory] language is clear and unambiguous[,] there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . ." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) "If the language permits more than one reasonable interpretation, however, the court looks 'to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.'

[Citation.] After considering these extrinsic aids, we 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*Wilcox, supra,* at pp. 977-978.)

## B

Section 383, subdivision (a) provides:

"An association established to manage a common interest development *shall have standing* to institute, defend, settle, or intervene in litigation, arbitration, mediation, or administrative proceedings in its own name *as the real party in interest* and without joining with it the individual owners of the common interest development, in matters pertaining to the following:

"(1)   Enforcement of the governing documents.

"(2)   *Damage to the common areas.*

"(3)   Damage to the separate interests which the association is obligated to maintain or repair.

"(4)   Damage to the separate interests which arises out of, or is integrally related to, damage to the common areas or separate interests that the association is obligated to maintain or repair." (Italics added.)[8] **(3b)**   Section 383 (formerly § 374) was originally enacted in 1976 in response to *Friendly Village Community Assn., Inc. v. Silva & Hill Constr. Co.* (1973) 31 Cal.App.3d 220 [107 Cal.Rptr. 123, 69 A.L.R.3d 1142], which held a condominium owners association could not pursue a construction defect action against a grading contractor because the association did not own, possess, or have the right to possess, the common area property allegedly damaged and therefore lacked standing to sue. (*Id.* at pp. 224-225; see *Orange Grove Terrace Owners Assn. v. Bryant Properties, Inc.* (1986) 176 Cal.App.3d 1217, 1221-1222 [222 Cal.Rptr. 523].) Section 383 does not

---

[8]Section 383 was formerly numbered section 374, which as originally enacted provided: "An owners' association established in a project consisting of condominiums . . . shall have standing to sue as the real party in interest for any damages to the commonly owned lots, parcels, or areas occasioned by the acts or omissions of others, without joining with it the individual owners of such project." (Stats. 1976, ch. 595, § 2, p. 1439.) In 1985 former section 374 was repealed and replaced with language that remains substantially the same as that in the current version of section 383, subdivision (a). (Stats. 1985, ch. 874, §§ 17, 18, pp. 2786-2787.)

limit the theory of liability an association may pursue. *Orange Grove* stated: "We perceive no reason for distinguishing between the Association and other similarly situated plaintiffs with respect to the recovery it may seek once its standing is established. [Section 383] does not suggest that the Association's recovery is limited to damages caused by negligent acts occurring during the Association's existence. In fact, the cases and textwriters suggest just the opposite, assuming that [section 383] empowers an association to bring an action against a developer for damages to common areas arising out of defective workmanship or materials. [Citations.]" (*Orange Grove Terrace Owners Assn., supra,* at pp. 1222-1223.)

C

Applying the rules of statutory construction, we conclude section 383 statutorily provides Association with the requisite privity to state a cause of action against Presley for breach of implied warranty with respect to the common areas of a condominium owned by a member of the Association. The relevant language of section 383, subdivision (a) provides: "An association established to manage a common interest development *shall have standing* to institute . . . litigation . . . in its own name *as the real party in interest* and without joining with it the individual owners of the common interest development, in matters pertaining to . . . [*d*]*amage to the common areas.*"[9] (Italics added.) Because section 383 grants an association standing to sue *as a real party in interest* for damage to a common interest development's common areas, we conclude the plain meaning of section 383's language provides Association with the requisite privity for maintaining a cause of action for breach of implied warranty for alleged damage to the common areas within the Project. ■ Section 367 provides: "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." A "real party in interest" is generally defined as "the person possessing the right sued upon by reason of the substantive law. [Citation.]" (*Killian v. Millard* (1991) 228 Cal.App.3d 1601, 1605 [279 Cal.Rptr. 877].) "The question of standing to sue is one of the right to relief and goes to the existence of a cause of action against the defendant [citation]."[10] (*Payne v. United California Bank* (1972) 23 Cal.App.3d 850, 859 [100 Cal.Rptr. 672].) "[T]he real party in interest is the party who has title to the cause of action, i.e., the one who has the right to maintain the cause of action." (*Vaughn v. Dame Construction Co.* (1990) 223 Cal.App.3d 144, 147

---

[9]The parties do not dispute that Project qualifies as a common interest development under section 383 or that Association was established to manage the Project.

[10]" 'Standing' refers to the requisite interest to support an action or the right to relief . . . ." (*Raven's Cove Townhomes, Inc. v. Knuppe Development Co.* (1981) 114 Cal.App.3d 783, 793, fn. 8 [171 Cal.Rptr. 334].)

[272 Cal.Rptr. 261].) A real party in interest "is the owner of the cause of action." (*Id.* at p. 148.) For example, "[s]omeone who is not a party to [a] contract has no standing to enforce the contract or to recover extra-contract damages for wrongful withholding of benefits to the contracting party." (*Hatchwell v. Blue Shield of California* (1988) 198 Cal.App.3d 1027, 1034 [244 Cal.Rptr. 249].) ▮▮▮▮ Therefore, because section 383 provides that associations have standing to sue in their own names *as real parties in interest* for damage to common areas, it deems associations to be owners of causes of action for damage to common areas with the right to relief for that damage. Section 383's language gives associations the right to maintain causes of action for damage to common areas, including causes of action for damage based on an alleged breach of implied warranty. Because section 383 gives associations the right to maintain breach of implied warranty causes of action as real parties in interest, its plain meaning necessarily includes the grant to associations of status as parties with the requisite privity of contract.

To the extent section 383's language is ambiguous and reasonably susceptible of alternative meanings, we nevertheless conclude extrinsic aids support our conclusion that the Legislature intended section 383 to give associations the right to maintain as real parties in interest causes of action for breach of implied warranty for damage to common areas, including the requisite privity of contract. The parties do not cite, and we are unaware of, any legislative history regarding section 383 (or former § 374) that discusses or otherwise relates to causes of action by associations for breach of implied warranty.[11] Absent relevant legislative history, we consider the statute's apparent purpose and public policy factors. "The rationale for allowing homeowners' associations to bring suit [under section 383] is that 'if the association does not have standing, the costs of prosecution of the case would not be a common expense, thus greatly increasing the difficulty of individual owners seeking redress against a corporate defendant [citation]." (*Raven's Cove Townhomes, Inc. v. Knuppe Development Co., supra,* 114 Cal.App.3d at p. 792.) Furthermore, it would be a waste of resources of the courts and litigants if each individual owner were required to join in an action for damage to common areas arising out of an alleged breach of implied warranty. Because associations generally are required to manage, maintain and repair a project's common areas (see Civ. Code, § 1364, subd.

---

[11]We grant Association's supplemental request for judicial notice of certain documents relating to the legislative history of section 383 and of a trial court order in an unrelated construction defect case. (Evid. Code, §§ 451, subd. (a), 452, subd. (c).) However, we do not rely on those documents in deciding the instant matter.

(a)),[12] it would be illogical to deprive associations of the ability to sue to recover for damage to common areas they are obligated to repair. Because individual owners generally do not have the right to repair common areas, it would be inefficient to require or allow only those owners, rather than their association, to sue for breach of implied warranty to recover for damage to common areas. One commentator noted: "There can be little doubt of the utility of [section 383] actions for the presentation of major construction defect issues." (2 Cal. Construction Contracts and Disputes (Cont.Ed.Bar 3d ed. 1999) Construction Defects: Theories of Liability and Special Procedures, § 8:37, p. 641.) Furthermore, to require individual owners to be named plaintiffs in an action for damage to common areas would be contrary to section 383's express provision that the association may sue "*in its own name* as *the* real party in interest and *without joining with it the individual owners.*" (Italics added.)

· Our construction of section 383 as impliedly including the requisite privity for breach of implied warranty causes of action is consistent with recently enacted Civil Code section 945, which applies to construction defect actions regarding new residential construction sold on or after January 1, 2003.[13] Civil Code section 945 provides: "The provisions, standards, rights, and obligations set forth in this title are binding upon all original purchasers and their successors-in-interest. For purposes of this title, *associations* and others *having the rights set forth in Section 383 . . . shall be considered to be original purchasers* and shall have standing to enforce the provisions, standards, rights, and obligations set forth in this title." (Italics added.) Civil Code section 945 makes explicit what section 383 implies— i.e., that associations have the requisite privity of contract to assert breach of implied warranty causes of action for damage to common areas. The Legislature's enactment of Civil Code section 945 shows an overall legislative scheme and purpose to allow associations to sue as real parties in interest for damage to common areas whether for breach of implied warranty or on any other theory of liability. Presley argues that the enactment of Civil Code section 945 by expressly providing contractual privity between common interest development associations and the developer shows that section 383

---

[12]Civil Code section 1364, subdivision (a) provides: "Unless otherwise provided in the declaration of a common interest development, the association is responsible for repairing, replacing, or maintaining the common areas, other than exclusive use common areas, and the owner of each separate interest is responsible for maintaining that separate interest and any exclusive use common area appurtenant to the separate interest."

[13]We grant Presley's request for judicial notice of Senate Bill No. 800 (2001-2002 Reg. Sess.), which resulted in the enactment of Civil Code section 945 and related provisions, and Association's complaint, but deny its request for judicial notice of the CCR's and Bernie Kastner's grant deed. (Evid. Code, § 451, subd. (a).)

does not provide that privity; otherwise Civil Code section 945 would be unnecessary. However, Senate Bill No. 800, which includes Civil Code section 945, was a comprehensive codification of residential construction defect law. Its provisions incorporated many existing legal principles as well as creating new principles. Under these circumstances we are not persuaded that Civil Code section 945 enunciates a new law rather than a clarification of existing law.

Considering these extrinsic aids for statutory construction, we conclude the legislative intent of section 383 is to give associations the standing to sue as real parties in interest in *all* types of actions for damage to common areas, including breach of implied warranty causes of action, and therefore section 383 necessarily grants associations the requisite privity of contract to state causes of action for breach of implied warranty. (*Renee J. v. Superior Court*, *supra*, 26 Cal.4th at p. 743; *Wilcox v. Birtwhistle, supra*, 21 Cal.4th at pp. 977-978.)

## D

Presley argues that section 383 applies only to tort causes of action and therefore does not apply to Association's cause of action for breach of implied warranty. However, the language of section 383 does not restrict the type of cause of action or theory of liability that associations may allege as real parties in interest in actions for damage to common areas. Furthermore, we conclude it cannot reasonably be inferred from the language of section 383 that it is intended to apply only to tort causes of action.[14] Presley notes section 383, subdivision (a)(2) refers to "damage" to the common areas and argues that term necessarily implies only tort causes of action are included within section 383's provisions. However, we do not read the term "damage" so restrictively. ▆ In its common usage, "damage" includes harm, loss, injury, detriment, or diminution in value. Damage could be caused by any breach of duty, whether that duty arises under contract, tort, or implied warranty.[15] ▆ Presley also argues the enactment of section 383, subdivisions (b) and (c) in 1993 shows an intent to restrict section 383's provisions to only tort causes of action. Although those new subdivisions relate to comparative negligence principles in tort law, they do not limit the broad

---

[14]For purposes of this discussion, we assume that a cause of action for breach of implied warranty is not a tort cause of action.

[15]Furthermore, as originally enacted in 1976, section 383 (then former § 374) did not use the term "damage," but rather "damages." That original term supports an inference the Legislature did not intend to limit section 383 to only tort causes of action. As Presley notes, the term "damages" refers to monetary compensation for detriment caused by a breach of an obligation, whether in contract (Civ. Code, § 3300) *or* tort (Civ. Code, § 3333).

language of section 383, subdivision (a), which was originally enacted in 1976 without any comparative negligence language. We are not persuaded that those subdivisions have the effect of limiting section 383's provisions to only tort causes of action.[16]

Presley also argues that if Association were deemed to have the requisite privity to state a breach of implied warranty cause of action, individual owners would be deprived of their individual privity of contract with Presley and therefore could not maintain individual actions against it. Presley's argument is premised on the assumption that our interpretation of section 383 would effect a *transfer* of an individual owner's privity of contract with the seller to Association. Privity of contract is a *relationship* that is a prerequisite for maintaining certain causes of action, including breach of implied warranty. Association has the requisite privity of contract not because privity is transferred from the owner of the condominium, but because the Legislature by statute has deemed Association to have the requisite privity of contract. An individual owner is *not* deprived of his or her privity of contract by our interpretation of section 383 giving Association the requisite privity to maintain as a real party in interest a cause of action for breach of implied warranty. In fact, an individual owner who is an original purchaser from Presley, including Kastner in this case, continues to have a privity of contract relationship with Presley and may maintain an individual cause of action against it for breach of implied warranty regardless of Association's section 383 cause of action for breach of implied warranty.

Presley argues Association would potentially have a conflict of interest with individual owners who have privity of contract with Presley. It construes our interpretation of section 383 as giving Association the right to derivatively assert the rights of original purchasers who have privity of contract with Presley. However, our construction of section 383 is *not* that Association has a derivative or representational right to allege the privity relationships of individual owners who were original purchasers. Rather, section 383 grants Association the requisite privity of contract, independent of any individual owner's privity of contract with Presley. Therefore, there is no conflict of interest between Association and any individual owners that would require a different interpretation of section 383.

---

[16]In *Raven's Cove*, the association alleged causes of action for strict liability *and breach of warranty.* (*Raven's Cove Townhomes, Inc. v. Knuppe Development Co., supra*, 114 Cal.App.3d at p. 787.) The court concluded the association had standing under section 383 (then former § 374) to sue for damage to commonly owned areas. (*Raven's Cove*, at p. 790.) Although the association in that case also owned the common areas and therefore presumably independently had privity of contract without the necessity of relying on section 383, the court did not consider a breach of warranty claim to be excluded from section 383's provisions.

Presley also argues Association's complaint is deficient because it does not expressly allege Association has privity of contract with Presley. However, the complaint alleges Association "brings this action under Sections 367 and 383." It also alleges Association is the real party in interest "pursuant to [section] 383." Therefore, the complaint is not deficient. Association's privity is not dependent on the privity of individual owners and therefore the complaint need not allege a derivative or representational privity on behalf of the individual owners.[17]

■ Finally, Presley argues that our interpretation of section 383 would circumvent the holding of *Aas v. Superior Court* (2000) 24 Cal.4th 627 [101 Cal.Rptr.2d 718, 12 P.3d 1125]. *Aas* concluded that homeowners and homeowners associations may not "recover damages in negligence from the developer, contractor and subcontractors who built their dwellings for construction defects that have not caused property damage." (*Id.* at pp. 632, 643, 653.) It noted other causes of action, including those for breach of contract and breach of warranty, would remain available for recovery of those types of damages. (*Id.* at pp. 636, 652.) *Aas* did not address or otherwise impact causes of action for breach of implied warranty or its requirement of privity. Therefore, *Aas* is not applicable to our construction of section 383 in this matter.

E

■ Because we conclude section 383 provides the Association with the requisite privity to state a cause of action against Presley for breach of implied warranty, the trial court erred by sustaining Presley's demurrer to the first cause of action.[18]

## DISPOSITION

Let a peremptory writ of mandate issue directing the San Diego County Superior Court to vacate its order of June 7, 2002, sustaining the demurrer of the real party in interest to the breach of implied warranty cause of action

---

[17]Presley also argues the second cause of action by Bernie Kastner, individually, against it for breach of implied warranty constitutes an admission by Association that it does not have the requisite privity. However, individual owners, including Kastner, may state their own causes of action for breach of implied warranty regardless of Association's section 383 cause of action. Therefore, the first and second causes of action are not mutually exclusive or inconsistent.

[18]Because we dispose of the petition on this ground, we need not address Association's other contentions.

and enter a new order overruling the demurrer. Costs are awarded to the prevailing party.

Huffman, Acting P. J., and O'Rourke, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied October 15, 2003. Baxter, J., did not participate therein.