[No. B225418. Second Dist., Div. Seven. Aug. 30, 2011.]

OFELIA JONES et al., Plaintiffs and Appellants, v.
CONOCOPHILLIPS COMPANY etc., et al., Defendants and Respondents.

**COUNSEL**

Metzger Law Group, Raphael Metzger, Kimberly A. Miller, Sarah Hodgson and Kathryn Saldana for Plaintiffs and Appellants.

King & Spalding, Gennaro A. Filice III, Peter A. Strotz and Paul R. Johnson for Defendants and Respondents Cytec Industries Inc., and The Dow Chemical Company.

Hurrell Cantrall, Thomas C. Hurrell and Melinda Cantrall for Defendant and Respondent Neville Chemical Company.

Glynn & Finley, Clement L. Glynn and Patricia L. Bonheyo for Defendant and Respondent ConocoPhillips Co.

Drinker Biddle & Reath and Sandra L. Weiherer for Defendant and Respondent SI Group, Inc.

Gates, O'Doherty, Gonter & Guy, Richard A. Muench, Jr., and Nathan E. Malone for Defendant and Respondent WD-40 Company.

## OPINION

**PERLUSS, P. J.**—Carlos Jones died in 2008 from diseases of the heart, liver and kidneys that his wife, Ofelia Jones, and surviving children (the Joneses) attribute to his exposure to multiple chemical products with which Carlos[1] worked during his employment by The Goodyear Tire and Rubber Company (Goodyear) and The Upjohn Company (Upjohn). In 2009 the Joneses sued 19 manufacturers[2] of 34 chemical products, alleging each product identified in the complaint contained toxins that were a substantial factor in causing Carlos's illness and death. This appeal arises from the judgment of dismissal entered after the trial court sustained certain of defendants' demurrers to the first amended complaint,[3] which were principally grounded on the contention the Joneses had failed to plead causation of Carlos's injuries with the specificity required by the Supreme Court in *Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71 [86 Cal.Rptr.2d 846, 980 P.2d 398] (*Bockrath*). Contrary to the contention of defendants and the ruling of the trial court, at the pleading stage the Joneses need not identify the specific toxin contained in each hazardous product to which Carlos was exposed that was a substantial factor in causing his illness to state a viable products liability claim. Accordingly, we reverse.

---

[1] Because Carlos and Ofelia share the same last name, we refer to them by their first names for convenience and clarity. (See *Callahan v. Gibson, Dunn & Crutcher LLP* (2011) 194 Cal.App.4th 557, 561, fn. 1 [125 Cal.Rptr.3d 120].)

[2] The original defendants were Ashland Inc., Calumet Specialty Products Partners, CITGO Petroleum Corp., ConocoPhillips Company (erroneously sued as ConocoPhillips Corp.), Cytec Industries, Inc., The Dow Chemical Co., Dow Chemical USA, Eliokem, Inc., Emerald Performance Materials, LLC, EniChem Synthesis, Flexsys America Co., Jurong Xingchun Chemical Co., Ltd., Lanxess Corp., Monsanto Co., Neville Chemical Co., Schenectady International, Inc., Total Fluides, Uniroyal Chemical Co., Inc., and WD-40 Manufacturing Co.

[3] Cytec Industries, Inc., The Dow Chemical Co., Neville Chemical Co., ConocoPhillips Co., SI Group, Inc. (formerly known as Schenectady International, Inc.), and WD-40 Co. demurred to the amended complaint and are parties to this appeal. They are referred to collectively as defendants.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 10, 2009 the Joneses filed a complaint alleging causes of action for negligence, strict liability failure to warn, strict liability design defect, fraudulent concealment, breach of implied warranties and loss of consortium. Two defendants demurred to the complaint on the ground it failed to comply with the requirements of *Bockrath*. They contended that, by suing the makers of every chemical Carlos had worked with during his employment by Goodyear and Upjohn and claiming all the products had caused his illnesses, the complaint failed to allege specific facts with respect to any one product and was thus defective. The court sustained the demurrers with leave to amend.

The Joneses filed a first amended complaint on February 5, 2010 naming the identical defendants and products and asserting the same causes of action. With respect to causation, the amended complaint alleges,[4] Carlos "worked with and was exposed to [these] products," which "contained significant concentrations of organic solvents and other cardiotoxic, hepatotoxic, nephrotoxic and other toxic chemicals." During the course of his employment, Carlos "was exposed to toxicologically significant levels of these chemicals. As a direct and proximate result of said exposure to said toxic chemical products, [Carlos] sustained serious injuries to his internal organs, including chemically induced cirrhosis of the liver, chemically induced cardiomyopathy and chemically induced kidney failure. . . . [Carlos] died of his injuries on April 1, 2008."

Additionally, "[a]s a result of [Carlos's] exposure to the foregoing toxic chemical products, toxins within said toxic chemicals entered [Carlos's] body. [¶] . . . [¶] Each of the foregoing toxic chemical products contain organic solvents and cardiotoxic, hepatotoxic, nephrotoxic and other toxic chemicals, which by and through their cardiotoxic, hepatotoxic and nephrotoxic nature, caused [Carlos's] chemically induced cirrhosis of the liver, chemically induced cardiomyopathy and chemically induced kidney failure and other injuries. Each toxin that entered [Carlos's] body was a substantial factor in bringing about, prolonging, and aggravating [Carlos's] chemically induced cirrhosis of the liver, chemically induced cardiomyopathy and chemically induced kidney failure and other injuries."

---

[4] We accept as true all facts properly pleaded in the amended complaint to determine whether the demurrer was properly sustained. (*Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 173, fn. 1 [51 Cal.Rptr.3d 471]; *Casterson v. Superior Court* (2002) 101 Cal.App.4th 177, 182–183 [123 Cal.Rptr.2d 637] ["[t]he reviewing court accepts as true all facts properly pleaded in the complaint in order to determine whether the demurrer should be overruled"]; see *Mack v. Soung* (2000) 80 Cal.App.4th 966, 971 [95 Cal.Rptr.2d 830] [all properly pleaded allegations deemed true, regardless of plaintiff's ability to later prove them].)

To illustrate the toxic effects of one chemical to which Carlos was exposed, dimethylformamide (DMF), contained in a Dow Chemical product marketed under the name of Polymide 2080-D/DHV, the amended complaint cites pathology studies identifying the hepatotoxic, nephrotoxic and cardiotoxic effects of DMF. The amended complaint does not specifically address the purported toxic effects of any other chemical and alleges only that "the toxicity of various organic solvents to the liver and kidney has long been recognized."

Several of the defendants demurred to the amended complaint. At a hearing on April 26, 2010 the trial court sustained the demurrers without leave to amend on three grounds: (1) the cause of action for fraudulent concealment failed because none of the defendants owed Carlos a fiduciary duty giving rise to a duty of disclosure, and the amended complaint failed to allege the circumstances of the alleged concealment with adequate specificity; (2) the amended complaint failed to establish privity between the Joneses and defendants sufficient to support a breach of implied warranty cause of action; and (3) the amended complaint was not sufficiently specific to apprise defendants of the particular toxins and products that allegedly caused Carlos's illnesses. A judgment of dismissal was entered in favor of the demurring defendants on May 21, 2010.

## CONTENTIONS

The Joneses contend the amended complaint alleges sufficiently specific facts to establish causation for all their causes of action against defendants and properly pleaded the concealed facts and duty of disclosure necessary to support their cause of action for fraudulent concealment. In addition, they contend Carlos was in privity with his employers Goodyear and Upjohn and they are therefore entitled to bring a claim for breach of implied warranties.

## DISCUSSION

### 1.  *Standard of Review*

On appeal from an order dismissing an action after the sustaining of a demurrer, we independently review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189]; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) We give the complaint a reasonable interpretation, "treat[ing] the demurrer as admitting all material facts properly pleaded," but do not "assume the truth of contentions, deductions or conclusions of law." (*Aubry*, at p. 967; accord, *Zelig v. County of Los Angeles* (2002)

27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].)

## 2. *The Allegations of Causation Are Sufficient Under* Bockrath

The Supreme Court decision in *Bockrath, supra*, 21 Cal.4th 71 established the causation pleading threshold for a complaint alleging harmful long-term exposure to multiple toxins under California law. In *Bockrath* the plaintiff had contracted multiple myeloma while working at Hughes Aircraft Company. (*Id.* at p. 77.) He sued at least 55 manufacturers of various chemical products and alleged his disease resulted from his exposure to harmful substances contained in those products. (*Ibid.*) According to the second amended complaint, he and his fellow workers had used " 'most, and perhaps all, of the . . . products' " and had inhaled and had direct skin contact with " 'most, and perhaps all' " of them. (*Ibid.*) Any products he had not been directly exposed to had been used or improperly stored somewhere at the plant, thereby causing him to have inhaled or had direct skin contact with all of the named chemicals, all of which produce " 'carcinogenic effects.' " (*Ibid.*) The trial court sustained demurrers without leave to amend based on the failure of the complaint to differentiate among products and defendants in alleging causation, and the Court of Appeal affirmed. (*Id.* at p. 78.)

■ The Supreme Court reversed and set forth explicit guidelines for plaintiffs attempting to allege injury resulting from exposure to toxic materials:[5] A plaintiff must "allege that he was exposed to each of the toxic materials claimed to have caused a specific illness"; "identify each product that allegedly caused the injury"; allege "the toxins entered his body" "as a result of the exposure"; allege that "he suffers from a specific illness, and that each toxin that entered his body was a substantial factor in bringing about, prolonging, or aggravating that illness"; and, finally, allege that "each toxin he absorbed was manufactured or supplied by a named defendant."[6] (*Bockrath, supra*, 21 Cal.4th at p. 80.) As the court emphasized, in keeping with the rule that allegations of fact should be made in "ordinary and concise language" (Code Civ. Proc., § 425.10),[7] "plaintiffs may, and should, allege

---

[5] After establishing the standard for pleading causation of a toxic injury, the Supreme Court remanded the case to the trial court to decide whether the plaintiff should be granted an opportunity to amend his complaint in keeping with those guidelines. (*Bockrath, supra*, 21 Cal.4th at p. 81.)

[6] The last requirement does not apply in a case in which liability may be assessed based on market share for a uniform product as outlined in *Sindell v. Abbott Laboratories* (1980) 26 Cal.3d 588 [163 Cal.Rptr. 132, 607 P.2d 924]. (*Bockrath, supra*, 21 Cal.4th at p. 80.)

[7] Statutory references are to the Code of Civil Procedure unless otherwise indicated.

the foregoing facts succinctly, and may do so in a conclusory fashion if their knowledge of the precise cause of injury is limited" (*Bockrath*, at p. 80).

█ In so holding, the court rejected the argument advanced here by defendants that a complaint is unacceptably speculative if a plaintiff has not specifically identified which toxin contained in a particular product caused the alleged injury or has sued the manufacturers of multiple products, alleging all of them contained toxins that were substantial factors in causing his injury. Nonetheless, defendants contend that a closer reading of *Bockrath* shows the term "toxic materials" used by the court in the first prong embraces both "products" and "toxins," thus requiring a plaintiff to identify not only the product, but also the specific toxin that was a substantial factor in causing the plaintiff's identified illness, to state a viable cause of action.

This gloss on the holding of *Bockrath* is simply not supported by the language of the opinion. As our colleagues in Division Four of this court explained nearly 10 years ago when interpreting *Bockrath*, the Supreme Court had been "primarily concerned with plaintiffs who lack any real notion of the identity of the product [that] was a substantial factor in causing their injury." (*Rivas v. Safety-Kleen Corp.* (2002) 98 Cal.App.4th 218, 241 [119 Cal.Rptr.2d 503].) Answering the contention (asserted by the plaintiff in that case) that the statute of limitations does not accrue until the toxin—and not just the product—is identified, Division Four stated: "We do not see how that conclusion can be drawn from the [*Bockrath*] court's language. The court stated that the plaintiff must identify 'each product that allegedly caused the injury' and that '[*i*]*t is insufficient to allege that the toxins in defendants' products caused it.*' (*Bockrath*[, *supra*, 21 Cal.4th at p. 80,] italics added.) Once the product had been identified, the plaintiff could allege that 'the toxins' in the product entered his body and were 'a substantial factor in bringing about, prolonging, or aggravating [his] illness.' (*Ibid.*) As we read the opinion, the Supreme Court was referring to 'toxins' in a general sense. It was not expressing a requirement that the plaintiff identify specific chemical compounds before he or she can assert a claim." (*Rivas*, at p. 241; see also *Bockrath*, at p. 83 [" 'considering that expert medical and scientific evidence would be required to prove [the plaintiff's] case, his lack of personal knowledge regarding the precise mechanism by which [his injury] occurred should not be viewed as an admission that he cannot identify which specific products caused his injuries' "].)[8]

---

[8] The cases cited by defendants to support their interpretation of *Bockrath* are simply inapposite. In *Setliff v. E. I. Du Pont de Nemours & Co.* (1995) 32 Cal.App.4th 1525 [38 Cal.Rptr.2d 763], a decision that predates *Bockrath*, the Third Appellate District affirmed the dismissal of a complaint brought by an employee of a paint store who had alleged the products sold by the store had caused his injuries. According to the form complaint, the defendant manufacturers knew of the dangers posed by the volatile organic compounds contained in their products

Undeterred, defendants argue this case exemplifies the concern expressed in *Bockrath* about overbroad litigation: "The law cannot tolerate lawsuits by prospecting plaintiffs who sue multiple defendants on speculation that their products may have caused harm over time through exposure to toxins in them, and who thereafter try to learn through discovery whether their speculation was well-founded." (*Bockrath, supra*, 21 Cal.4th at p. 81.)

■ Again, defendants ignore the mandate of *Bockrath*. The *Bockrath* court recognized that the plaintiffs may genuinely lack information about the specific cause of their injury and should not be barred from pursuing their claims. (*Bockrath, supra*, 21 Cal.4th at p. 82.) The court instructed courts and litigants that the remedy for improperly speculative pleading is provided by subdivision (b) of section 128.7, which imposes an obligation on an attorney or unrepresented party to ensure factual allegations are made in good faith and have, or are likely to have, "evidentiary support after a reasonable opportunity for further investigation or discovery." (§ 128.7, subd. (b)(3).) A lawyer who is found to have deliberately filed a products liability suit without a well-founded belief in the truth of a particular allegation is subject to sanction (see § 128.7, subd. (c)) or other disciplinary action. (*Bockrath*, at pp. 82–84.) Indeed, the court strongly cautioned, "[I]t is sharp practice to implead defendants in a products liability suit alleging long-term exposure to multiple toxins unless, after a reasonable inquiry, the plaintiff actually believes that evidence has been or is likely to be found raising a reasonable medical probability that each defendant's product was a substantial factor in causing the harm . . . ." (*Id.* at p. 82, citing *Rutherford v. Owens-Illinois, Inc.*

(paint, solvents, strippers and glue products) and marketed them without disclosing those dangers. (*Id.* at p. 1531.) The plaintiff readily admitted "he could not identify the specific chemicals and toxics involved in his injury or which defendant manufactured the product or products responsible for his injury." (*Id.* at p. 1534.) Based on this admission, the court concluded he could not state a cause of action. (*Ibid.*) As here, the *Bockrath* defendants relied on *Setliff*, a comparison the Supreme Court dismissed as "unhelpful." (*Bockrath, supra*, 21 Cal.4th at p. 84.) As the court explained, "In this case, as distinguished from *Setliff*, plaintiff did identify the products that allegedly injured him. He only admitted that he could not state the precise mechanism by which they caused his illness." (*Ibid.*)

Defendants' reliance on *Oddone v. Superior Court* (2009) 179 Cal.App.4th 813 [101 Cal.Rptr.3d 867] is equally misplaced. In *Oddone* the decedent's wife brought a negligence action against her husband's employer alleging she had been injured by the chemical substances brought home by her husband on his body and clothing. (*Id.* at pp. 816–817.) Affirming the dismissal of her complaint, the court concluded the employer did not owe a duty of care to the wife to prevent secondary exposure to toxic chemicals, in part because she had failed to allege an adequate nexus between her exposure and the chemicals used by the employer. (*Id.* at p. 821.) Juxtaposing this missing nexus with the pleading requirements of *Bockrath*, the court noted the wife had failed to identify even one chemical or the resulting injury she had suffered, an effort the court described as "palpably inadequate." (*Ibid.*)

Neither of these cases presents the situation here, in which the Joneses have alleged Carlos's heart, liver and kidney disease resulted from his exposure to specific, named chemical products.

(1997) 16 Cal.4th 953 [67 Cal.Rptr.2d 16, 941 P.2d 1203].) For instance, the court added, "A cancer-afflicted plaintiff suing every manufacturer of an airborne substance found in the Los Angeles basin probably would be exposed to sanctions for the suit, even if certain defendants eventually were found to have made a product that was a substantial factor in the onset of the plaintiff's cancer. *We presume that plaintiff here was aware of his duty to pursue his suit in good faith, and, in the absence of contrary evidence, that he did so."* (*Bockrath*, at p. 83, italics added.)

Defendants argue this remedy is simply not practical because a plaintiff need not disclose his or her causation evidence until expert discovery, which ordinarily occurs near the date for trial and well beyond the statutory cutoff for the filing of summary judgment motions.[9] (See, e.g., § 437c, subd. (a).) That concern is more properly addressed to the trial court, which retains broad discretion over case management and scheduling issues; it does not warrant judgment entered against a plaintiff based on his or her inability to identify in the complaint a specific causative agent for a chemically induced injury.[10] (Cf. *Rutherford v. Owens-Illinois, Inc., supra,* 16 Cal.4th at pp. 974–975 [describing inherent "scientific uncertainty" in proving causation of asbestos-related mesothelioma].) This is especially true in light of continuing scientific advances that may offer improved insight into causation than traditionally has been available. (See, e.g., Gold, *The More We Know, the Less Intelligent We Are?—How Genomic Information Should, and Should Not, Change Toxic Tort Causation Doctrine* (2010) 34 Harv. Envtl. L.Rev. 369, 396 ["there can be no doubt that toxicogenomics and molecular epidemiology will, over time, produce powerful new insights into the cellular mechanics by which numerous toxic substances produce disease . . . and demonstrate causal links that up to now could only be inferred or speculated"].)

In sum, the allegations of the amended complaint meet the standard enunciated in *Bockrath*, and the trial court erred in sustaining demurrers to the products liability claims.

---

[9] The Supreme Court acknowledged that a plaintiff probably will not know or understand exactly how his or her injury was caused and that the failure to identify the "precise mechanism" of the injury in discovery responses is not fatal to the claim. (*Bockrath, supra,* 21 Cal.4th at pp. 83–84.)

[10] The concern defendants might be taken off guard by plaintiff's expert evidence related to causation seems, at best, rhetorical. Presumably, a defendant is more likely than a plaintiff to have studied the risk associated with a particular product it has marketed. The Joneses' amended complaint identifies the individual products to which they believe Carlos was exposed and the illnesses he suffered; defendants thus have ample notice of the toxins contained in those products and the available epidemiological evidence the Joneses' experts might offer.

### 3. *The Joneses Have Adequately Alleged a Cause of Action for Fraudulent Concealment*

"Not every fraud arises from an affirmative misstatement of material fact. 'The principle is fundamental that "[deceit] may be negative as well as affirmative; it may consist of suppression of that which it is one's duty to declare as well as of the declaration of that which is false." [Citations.] Thus section 1709 of the Civil Code provides: "One who wilfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Section 1710 of the Civil Code in relevant part provides: "A deceit, within the meaning of the last section, is either: . . . 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact . . . ." ' " (*Lovejoy v. AT&T Corp.* (2001) 92 Cal.App.4th 85, 95 [111 Cal.Rptr.2d 711].)    "[T]he elements of a cause of action for fraud based on concealment are: ' "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." ' " (*Kaldenbach v. Mutual of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 850 [100 Cal.Rptr.3d 637].)

In sustaining the demurrers to this cause of action, the trial court ruled the Joneses had failed to allege with specificity defendants' timely knowledge of the toxic hazards of their chemicals (see, e.g., *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 878 [76 Cal.Rptr.3d 325] ["[c]oncealment is a species of fraud, and '[f]raud must be pleaded with specificity' "]) or to identify the source of a duty on their part to disclose such information, if known, to Carlos (see, e.g., *Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 745 [54 Cal.Rptr.3d 527]).

The Joneses respond that, "[g]enerally speaking, manufacturers have a duty to warn consumers about the hazards inherent in their products. [Citation.] The requirement's purpose is to inform consumers about a product's hazards and faults of which they are unaware, so that they can refrain from using the product altogether or evade the danger by careful use." (*Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 64 [74 Cal.Rptr.3d 108, 179 P.3d 905], citing *Anderson v. Owens-Corning Fiberglas Corp.* (1991) 53 Cal.3d 987, 1003 [281 Cal.Rptr. 528, 810 P.2d 549]; accord, *Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1316 [120 Cal.Rptr.3d 605].) Thus, the Joneses argue, defendants owed a duty to share information about

the toxicity of their products with those who could be expected to use those products, namely employees like Carlos, and they as plaintiffs should be permitted to explore the extent of defendants' knowledge of these hazards in discovery without first identifying specific acts by defendants, precisely because defendants alone know when they became aware of the particular hazards associated with their products. Requiring specificity at this juncture, they assert, is neither realistic nor mandated by case law. As one court has aptly observed, "it is harder to apply [the requirement of specificity] to a case of simple nondisclosure. 'How does one show "how" and "by what means" something didn't happen, or "when" it never happened, or "where" it never happened?' " (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1384 [89 Cal.Rptr.3d 659] (*Alfaro*); see also *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 217 [197 Cal.Rptr. 783, 673 P.2d 660] [" '[e]ven under the strict rules of common law pleading, one of the canons was that less particularity is required when the facts lie more in the knowledge of the opposite party . . .' "].)[11]

These principles are equally pertinent to the scope of defendants' duty to disclose. Although, typically, a duty to disclose arises when a defendant owes a fiduciary duty to a plaintiff (see, e.g., *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 346–347 [134 Cal.Rptr. 375, 556 P.2d 737]), a duty to disclose may also arise when a defendant possesses or exerts control over material facts not readily available to the plaintiff. (See, e.g., *Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 482 [55 Cal.Rptr.2d 225] [" '[t]he duty to disclose may arise without any confidential relationship where the defendant alone has knowledge of material facts which are not accessible to the plaintiff' "].) In *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326 [60 Cal.Rptr.2d 539], a decision relied upon by defendants, each of the circumstances cited by the court in which a duty to disclose may exist *absent* the presence of a fiduciary relationship concerns the defendant's exertion of control over material facts that were not disclosed to the plaintiff, that is, " 'when the defendant ha[s] exclusive knowledge of material facts not known to the plaintiff' "; " 'when the defendant actively conceals a material fact from the plaintiff' "; or " 'when the defendant makes partial representations but also suppresses some material facts.' " (*Id.* at p. 336.)

Here, the amended complaint alleges defendants were "aware of the toxic nature of their products" and "owed a duty to disclose the toxic properties of

---

[11] Applying these principles in the context of a class action alleging fraudulent concealment of various deed restrictions by the defendant, the *Alfaro* court concluded it was not necessary to provide detailed allegations for each class member of the defendant's fraudulent concealment; " '[t]hose details . . . are properly the subject of discovery, not demurrer.' " (*Alfaro, supra,* 171 Cal.App.4th at p. 1385.)

their products to [Carlos] because [they] alone had knowledge of material facts, to wit the toxic properties of their products, which were not available to [Carlos]." It also alleges defendants owed a duty to disclose because they "made representations regarding their products, but failed to disclose additional facts which materially qualify the facts disclosed, and/or which rendered the disclosures made likely to mislead [Carlos]." These conclusory allegations are supplemented with respect to the single compound, DMF. The Joneses cite studies published as early as 1969 attesting to DMF's toxicity, several years before Carlos began working at Goodyear where he was exposed to the Dow product containing DMF.

At a minimum, the amended complaint states a viable claim for fraudulent concealment against Dow Chemical, the manufacturer of the product Polymide 2080-D/DHV, which allegedly contained DMF. The Joneses have alleged DMF was known to be hazardous as early as 1969, and Dow Chemical concealed the toxic properties of their product, which Carlos would not have used had he been fully advised of its toxicity.

It is a closer question whether these allegations support causes of action for fraudulent concealment against the remaining defendants, that is, in this context whether the amended complaint, considered as a whole, provides defendants with sufficient notice of the particular claims against them. (See *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38 [77 Cal.Rptr.2d 709, 960 P.2d 513] [in testing a complaint against a demurrer, "[w]e . . . 'give the complaint a reasonable interpretation, reading it as a whole and its parts in their context' "].) On balance, we conclude the amended complaint does provide adequate notice to the remaining defendants of the material facts they allegedly concealed from Carlos. Based upon the existing allegations, each defendant has received notice of the particular product it made that was used at the Goodyear and Upjohn plants at which Carlos worked. The pleading further alleges these products "contained significant concentrations of organic solvents . . . and other toxic chemicals" and "[t]he toxicity of various organic solvents to the liver and kidney has long been recognized." Each defendant is therefore on notice that it allegedly concealed or failed to disclose the toxic properties of the product it sold to Goodyear and Upjohn during the course of Carlos's employment. Although sparse, nothing more is required at this early stage of the litigation.

4. *The Trial Court Erred in Sustaining Defendants' Demurrers to the Cause of Action for Breach of the Implied Warranty*

■ " 'A warranty is a contractual term concerning some aspect of the sale, such as title to the goods, or their quality or quantity. The warranty may be express [citation] or implied [citation].' [Citation.] Implied warranties are

based on implied representations rather than on promises . . . [citation] [and] . . . may be created by statute or case law." (*Windham at Carmel Mountain Ranch Assn. v. Superior Court* (2003) 109 Cal.App.4th 1162, 1168 [135 Cal.Rptr.2d 834]; see Cal. U. Com. Code, §§ 2314, 2315.) "The doctrine of implied warranty in a sales contract is based on the actual and presumed knowledge of the seller, reliance on the seller's skill or judgment, and the ordinary expectations of the parties." (*Pollard v. Saxe & Yolles Dev. Co.* (1974) 12 Cal.3d 374, 379 [115 Cal.Rptr. 648, 525 P.2d 88].) As a general rule, a cause of action for breach of implied (or express) warranty requires privity of contract; "there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale." (*Burr v. Sherwin Williams Co.* (1954) 42 Cal.2d 682, 695 [268 P.2d 1041]; accord, *Arnold v. Dow Chemical Co.* (2001) 91 Cal.App.4th 698, 720 [110 Cal.Rptr.2d 722].)

The trial court ruled Carlos was not in privity with any of the defendants and sustained the demurrers to this cause of action. The Joneses contend Carlos, as an employee of Goodyear and Upjohn, companies that were in privity with defendants, had privity through his employers.

■ There are, of course, multiple court-created exceptions to the general rule of privity. (See *Windham at Carmel Mountain Ranch Assn. v. Superior Court, supra,* 109 Cal.App.4th at p. 1169.) For example, exceptions to the privity requirement have been found in cases involving foodstuffs, drugs and pesticides, substances marketed with the knowledge the purchaser may not be the ultimate consumer of the product (see, e.g., *Klein v. Duchess Sandwich Co., Ltd.* (1939) 14 Cal.2d 272, 284 [93 P.2d 799] [foodstuffs]; *Gottsdanker v. Cutter Laboratories* (1960) 182 Cal.App.2d 602, 607 [6 Cal.Rptr. 320] [polio vaccine]; *Arnold v. Dow Chemical Co., supra,* 91 Cal.App.4th at pp. 720–721 [pesticide spray]). The strict requirement of privity has also been excused when an inherently dangerous instrumentality causes harm to a buyer's employee. (See *Peterson v. Lamb Rubber Co.* (1960) 54 Cal.2d 339, 347 [5 Cal.Rptr. 863, 353 P.2d 575] [grinding wheel]; *Barth v. B. F. Goodrich Tire Co.* (1968) 265 Cal.App.2d 228, 246–247 [71 Cal.Rptr. 306] [tires].) Whether these cases are viewed as expanding the doctrine of privity or relieving a plaintiff of the obligation to demonstrate privity in favor of the emerging tort doctrine of strict liability (see, e.g., *Alvarez v. Felker Mfg. Co.* (1964) 230 Cal.App.2d 987, 997 [41 Cal.Rptr. 514]; *Greenman v. Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 63 [27 Cal.Rptr. 697, 377 P.2d 897]; *Windham at Carmel Mountain Ranch Assn.,* at p. 1169 & fn. 7), the result is the same.

Although we have considerable doubt as to the value of the Joneses' implied warranty cause of action in light of their strict liability claims, we agree with them that such a cause of action is viable as to potentially

hazardous chemical products manufactured and sold to companies for use by their own employees in the manufacturing process. As the *Peterson* court explained, "it is a matter of common knowledge, and of course known to vendor-manufacturers, that most businesses are carried on by means of the assistance of employees and that equipment or supplies purchased by employers will in actual use be handled by the employees, who in this respect may be said to stand in the shoes of the employer." (*Peterson v. Lamb Rubber Co., supra,* 54 Cal.2d at p. 347.) Because Carlos was an employee of the purchasers of hazardous chemical products for use in the workplace, the Joneses have adequately stated a claim for breach of implied warranty.

## DISPOSITION

The judgment is reversed. The Joneses are to recover their costs on appeal.

Zelon, J., and Jackson, J., concurred.

Respondents' petition for review by the Supreme Court was denied November 30, 2011, S197128. Kennard, J., Chin, J., and Corrigan, J., did not participate therein.