# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT W. WALTER,
       *Plaintiff-Appellant,*

v.

RICHARD C. DRAYSON, Individually;
ELIZABETH WALTER Individually;
KAREN TEMPLE, ATTORNEY AT LAW
LLLC, doing business as Bodden
& Temple, LLLC; KAREN M.
TEMPLE, also known as Karen M.
Grant Temple also known as
Karen M. Grant,
       *Defendants-Appellees.*

No. 07-16284

D.C. No.
CV-06-00568-SOM

OPINION

Appeal from the United States District Court
for the District of Hawaii
Susan Oki Mollway, District Judge, Presiding

Argued and Submitted June 20, 2008
Submission Vacated June 27, 2008
Resubmitted August 11, 2008
Honolulu, Hawaii

Filed August 18, 2008

Before: Alfred T. Goodwin, Pamela Ann Rymer, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Rymer

**COUNSEL**

Robert W. Walter, Pro se, Greenwood Village, Colorado, plaintiff-appellant.

Mark D. Bernstein, Honolulu, Hawaii, for defendant-appellee Elizabeth Walter; Shelton G. W. Jim On, Jim On & Beerman, Honolulu, Hawaii, for defendant-appellee Richard C. Drayson; Keith K. Hiraoka, Roeca Louie & Hiraoka, Honolulu, Hawaii, for defendants-appellees Karen M. Temple and Karen Temple, AAL, LLLC.

## OPINION

RYMER, Circuit Judge:

Robert W. Walter (Walter), one of four siblings who are beneficiaries of a trust created by their mother, Patricia Ward Walter, asserts violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) and (d), as well as various state law claims, against Elizabeth Walter, a trustee; Richard C. Drayson, Patricia Walter's CPA and also a trustee; and Karen Temple together with her law firm, Bodden & Temple, who provided legal services to the trustor and the trustees. Walter's RICO theory is that Elizabeth Walter, Drayson, Temple, and her firm, were an associated-in-fact enterprise whose purpose was to gain and maintain control of the trust and to facilitate the wrongful taking of trust assets.

The district court dismissed the second amended complaint in a published opinion. *Walter v. Drayson*, 496 F.Supp.2d 1162 (D. Haw. 2007). It held that Temple's role was limited to providing legal services such that she did not operate or manage the enterprise and so, could not be liable for conducting its affairs under *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993), and *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993). For this reason the court also dismissed the RICO conspiracy allegations. Walter appeals, arguing that the district court misapprehended the "operation and management" test in the context of an associated-in-fact enterprise. We conclude otherwise based on the pleadings, and the Second Amended RICO Case Statement, before us.

Lacking the hook of a federal question, Walter's state law claims may proceed only if there is an independent basis for jurisdiction. However, his claims sounding in breach of fiduciary duty necessarily implicate Eugene H. Rock, who became a successor trustee upon Patricia Walter's death, and who, like Walter, is a resident of Colorado. Thus, diversity is

destroyed and these claims were properly dismissed under Rule 19 of the Federal Rules of Civil Procedure.

Accordingly, we affirm.

I

In 1986, Patricia Ward Walter created a revocable living trust with herself as sole trustee. Her four children, including Robert and Elizabeth, were designated as equal beneficiaries. She died in 2005.

The gist of Walter's complaint is that once his mother became incapacitated by a series of strokes, his sister, Elizabeth, improperly removed jewelry belonging to the trust, and after Patricia Walter's death, failed to rent real property owned by the trust and continued paying caregivers. Temple is a Maui lawyer who represented Patricia Walter in various trust matters and did legal work for the trustees. Walter alleges that in doing so, Temple acted in her personal, rather than professional, capacity; in particular, he avers, Temple advised Elizabeth Walter not to send monthly reports, refused to allow Walter to see trust documents not protected by the attorney client privilege, and sent communications to non-clients. Temple, Elizabeth Walter, and Drayson, it is alleged, were an associated-in-fact enterprise to achieve the shared goal of gaining control of the trust, facilitating the wrongful taking of trust assets by Elizabeth Walter and Drayson, fraudulently obtaining releases of liability, concealing their acts, and impeding justice. The complaint charges that these acts amounted to blackmail, extortion, mail fraud, theft, waste of trust assets, and other predicate offenses.

In his original complaint, Walter sought relief for violation of federal and state RICO, an accounting, and an order removing Drayson and Elizabeth Walter as trustees. It was dismissed on motion, and a First Amended Complaint was filed that eliminated the request for injunctive and declaratory

relief. It, too, was dismissed with leave to amend. To the district court it did not appear that Temple did anything beyond acting as legal counsel to the trust, thus the allegations in its view did not satisfy the "operation or management" test adopted by *Reves*. Walter then filed the Second Amended Complaint, at issue now, together with an amended RICO Case Statement. The district court again dismissed the action, this time with prejudice. It held that allegations that Temple was not acting in her capacity as trustees' counsel were conclusory, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), and the factual allegations that she caused Walter not to receive monthly reports and failed to send information he requested failed to show that she was directing the affairs of the enterprise.

This appeal followed.

## II

Our task is simplified by Walter's position in the district court that if Temple is not liable, he cannot prevail on his § 1962(c) claims. Likewise, we do not need to consider the viability of Walter's conspiracy claim under 18 U.S.C. § 1962(d), because he does not appeal the dismissal on this basis. Consequently, all we must decide is whether *Reves* applies and, assuming it does, whether Temple conducted the affairs of the enterprise under its standard.

We are guided by the normal rules applicable to review of dismissals for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Thus, our review is de novo. We construe the complaint (and, in this case, also the RICO statement) in the light most favorable to the non-moving party, and we take the allegations and reasonable inferences as true. *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007) (en banc). In addition, we are mindful of *Odom*'s enjoinder not to be stingy in interpreting and applying RICO. *Id*. at 547.

**[1]** The statute that Temple allegedly violated, 18 U.S.C. § 1962(c), provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

"To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' " *Odom*, 486 F.3d at 547 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). It is the first, or conduct, element that is at issue here.

Walter argues that Temple had a major role in the enterprise and his RICO claims were properly pled in that she did not act in accordance with applicable Hawai'i and professional standards. He relies on *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005), where we acknowledged that DuPont and the law firms hired to defend it in lawsuits brought by Living Designs could be an associated-in-fact enterprise. The issue was whether the enterprise formed by DuPont, the law firms it employed, and the expert witnesses retained by the law firms, was separate and distinct from DuPont, the RICO "person" alleged in the complaint. We held that they were, as the litigation enterprise was necessarily distinct from the client retaining the services. *Id.* at 362. But *Living Designs* sheds little light on this case, where there is no question about structure, and we take it as given that Drayson, Elizabeth Walter, and Temple *could be* an associated-in-fact enterprise. Rather, the issue here is whether the particular allegations about Temple are sufficient to subject her to liability for conducting the affairs of the enterprise.

**[2]** *Reves* is the controlling authority on the point of what constitutes "conduct." In *Reves*, a RICO claim was asserted

against Arthur Young, an accounting firm, that had reviewed a series of transactions and incorrectly certified records of the Farmer's Cooperative of Arkansas and Oklahoma, Inc., which was the enterprise. The Court held that failure to advise correctly did not give rise to liability under § 1962(c). In so doing, it rejected Reves's position that "conduct" should be read as "carry on" so that almost any involvement would do. Instead, it concluded that the word "conduct," used twice in § 1962(c), "requires an element of direction." 507 U.S. at 177-78. At the same time, the Court explained that "participate" connotes "to take part in." Thus, "to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Id.* at 179. While it is not necessary to be upper management to be liable, and the Court did not have to decide the extent to which low-level employees could "participate" in the conduct of an enterprise's affairs given how clear it was that Arthur Young was not acting under the direction of the Co-op's officers or board, it did observe that an enterprise "also might be 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it as, for example, by bribery." *Id.* at 184.

**[3]** We applied *Reves*'s "operation or management" test to the provision of legal services in *Baumer*. Emery Erdy and Estate Planning Associates, Inc. (not defendants in the RICO case) sold limited partnership interests until they got cross-threaded with the California Department of Corporations. They then retained Pachl, an attorney and RICO defendant, who wrote two letters to the Department, filed a partnership agreement, and helped Erdy in bankruptcy proceedings. We found this level of involvement insufficient to impute liability to Pachl under *Reves*. Pachl held no formal position in the limited partnership; he played no part in directing the affairs of the enterprise; and his role was limited to providing legal services. Further, we held: "Whether Pachl rendered his services well or poorly, properly or improperly, is irrelevant to the *Reves* test." 8 F.3d at 1344. It follows that Temple's

alleged involvement is also insufficient. Like the accounting firm in *Reves*, she and her firm were not acting under direction from the trust or the trustees, at least, not so far as we can tell from the pleadings. Like the lawyer in *Baumer*, she allegedly wrote emails, gave advice, and took positions on behalf of her clients. We assume (because we must) that her performance was deficient in the respects claimed by Walter. But we know from *Baumer* and *Reves* that the quality of the services rendered doesn't matter. And there is no indication that Temple, anymore than Pachl or Arthur Young, was thereby directing the enterprise. It is not enough that Temple failed to stop illegal activity, for *Reves* requires "some degree of direction." 507 U.S. at 179. Finally, the factual allegations raise no inference that Temple tried to control the enterprise by anything akin, for example, to bribery. *See id.* at 184.

Walter maintains that reliance on *Baumer* and *Reves* is misplaced as the enterprises alleged in those cases were not associated-in-fact enterprises.[1] He submits that this distinction is material, pointing out that the Seventh Circuit in *MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.*, noted the difference between one who is an "outsider" to the enterprise (as Arthur Young was in *Reves*) and one who is part of the enterprise itself. 62 F.3d 967, 979 (7th Cir. 1995). In that case, MCM, which was a supplier of forklifts and moving equipment, alleged that two exhibition contractors, A-B and FDC, refused to rent forklift equipment from MCM because they had been coerced by a competing rental equipment company, O.G. Service Corporation, into refusing to deal. The RICO enterprise was alleged to be associated-in-fact and comprised of O.G., A-B, FDC, the Teamsters, and others, to make O.G. the exclusive provider of forklift equipment. The activities of A-B and FDC allegedly were undertaken at the

---

[1]He also suggests that time has overtaken *Baumer*, given that *Odom* overruled *Chang v. Chen*, 80 F.3d 1293 (9th Cir. 1996), which was of the same vintage. However, as a panel, we lack the option of considering this possibility.

direction of other members of the enterprise. The court saw the issue as whether A-B and FDC were "outsiders," like the accounting firm in *Reves*, or were lower-rung participants who acted under the direction of the enterprise's upper management. On the facts alleged, it came down on the side of lower-rung participants because A-B and FDC were alleged to be members of an association-in-fact constituting the enterprise, they were part of the enterprise itself, they knowingly undertook the predicate acts "at the direction" of the enterprise's management, and they were "vital to the achievement of the enterprise's primary goal, as only they had the ability to exclude MCM from the market by dealing exclusively with [O.G.]" *Id*.

**[4]** While true that neither *Reves* nor *Baumer* concerned an associated-in-fact enterprise, whereas this is the type of enterprise at issue here, still there must be an element of direction. Section 1962(c)'s "conduct" requirement applies without regard to the nature of the enterprise. Otherwise, as *Reves* explains, simply being involved would suffice. 507 U.S. at 177-78. No doubt Temple was involved as an alleged part of the enterprise, but the conduct attributed to her would not support recovery for giving, or taking, direction. Temple does not occupy a position in the "chain of command," as the First Circuit put it, through which the affairs of the enterprise are conducted. *United States v. Oreto*, 37 F.3d 739, 750 (1st Cir. 1994) (quoted with approval in *MCM*, 62 F.3d at 978). Unlike the contractors in *MCM*, she did not become a participant in directing the enterprise's affairs by knowingly implementing decisions of upper management. And she was not indispensable to achievement of the enterprise's goal. In this, too, Temple is different from the contractors in *MCM* whose participation was "vital" to the mission's success because they were the only act in town.

**[5]** In sum, the pleadings show that Temple and her firm were part of the enterprise but fail to show that she or her firm had "some part in directing its affairs." *Reves*, 507 U.S. at

179. One can be "part" of an enterprise without having a role in its management and operation. Simply performing services for the enterprise does not rise to the level of direction, whether one is "inside" or "outside." Accordingly, neither reasonable inferences, nor triable issues, exist sufficient to subject Temple or her firm to liability under § 1962(c).

### III

Walter argues that, in any event, the third trustee is not a required party[2] on the state law claims for the primary reason that he brings this action on his own behalf — not derivatively for the trust or the beneficiaries — and that he seeks to recover tort damages, not to recover trust assets. Further, Walter posits that an accounting is not necessary because he was entitled to immediate possession of his 25% portion of trust assets in July 2006 when the trustees determined to proceed with a preliminary distribution. Moreover, Walter claims, the trust has in effect terminated and is being kept alive only to make it appear that this action sounds in equity.

[6] This said, Walter does not dispute that an action for breach of a trustee's fiduciary duty must proceed in equity unless the beneficiary is due an immediate, unconditional payment, or that a trustee is under no obligation to distribute immediately if an accounting would be necessary to ascertain the correct amount. Among other things, Walter claims that the trustees failed to collect rental income from Patricia Walter's condominium from October 29, 2005 through June 30, 2006. However, the amount is uncertain. Even if it could reasonably be estimated by comparables, there's no telling whether taxes and fees would cut into the rent. Thus, the trust-

---

[2]Fed. R. Civ. P. 19 (2007) has replaced "necessary party," the phrasing at the time of the district court's decision, with "required party." However, the change is stylistic, not substantive, so has no effect on the analysis. *See Republic of the Philippines v. Pimentel*, ___ U.S. ___, 128 S.Ct. 2180, 2184-85 (2008).

ees' exposure is indefinite and an accounting is required to settle it.

**[7]** This being so, the trust and the trustees are required parties. *See Lucas v. Lucas*, 20 Haw. 433, 441-42 (1911); Fed. R. Civ. P. 19. Rock, however, cannot be joined as he and Walter are both citizens of Colorado. Therefore, dismissal of the state law claims, without prejudice, was appropriate.

AFFIRMED.