MITSUI O.S.K. LINES, LTD., Plaintiff,

v.

SEAMASTER LOGISTICS, INC., Summit Logistics International, Inc., American Global Logistics, LLC, Kesco Container Line, Inc., Kesco Shipping, Inc., and Does 1 through 20, Defendants.

Case Nos. 10–cv–5591–SC, 11–cv–2861–SC.

United States District Court, N.D. California.

Dec. 19, 2012.

Conte C. Cicala, James Barton Nebel, Flynn, Delich & Wise, San Francisco, CA, Erich Paul Wise, Flynn, Delich & Wise, Long Beach, CA, for Plaintiff.

Katharine Essick, Eric Danoff, Kirk B. Freeman, Matthew Alan Mallet, Law Offices of Kirk B. Freeman, San Francisco, CA, Benjamin I. Fink, Neal F. Weinrich, Berman, Fink, Van Horn, P.C., Atlanta, GA, for Defendants.

*ORDER RE: MOTION FOR PARTIAL SUMMARY JUDGMENT*

SAMUEL CONTI, District Judge.

## I. *INTRODUCTION*

Now pending before the Court is the motion of Defendant American Global Logistics, LLC ("Defendant" or "AGL") for partial summary judgment against Plaintiff Mitsui O.S.K. Lines, Ltd. ("Plaintiff" or "MOL"). ECF No. 123 ("Mot.").[1] The motion is fully briefed and, pursuant to Civil Local Rule 7–1(b), suitable for decision without oral argument. ECF Nos. 133 ("Opp'n"), 144 ("Reply"). As set forth below, AGL's motion is GRANTED IN PART and DENIED IN PART.

## II. *BACKGROUND*

The following background facts are undisputed. The Shipping Act of 1984, 46 U.S.C. §§ 40101 *et seq.* ("Shipping Act"), regulates both vessel-operating common carriers ("VOCC") and non-vessel-operating common carriers ("NVOCC"). VOCCs operate ships that carry cargo over water between the United States and foreign countries for pay. *See* 46 U.S.C. § 40102(6), (17). NVOCCs hold themselves out as common carriers but do not themselves operate vessels; they use VOCCs to carry cargo over water and hence are shippers in their relationships to VOCCs. *See id.* § 40102(16). VOCCs and NVOCCs may enter into service contracts whereby the NVOCC, as shipper, commits to shipping a certain amount of cargo over a period of time and the VOCC, as carrier, commits to giving the shipper a certain rate and service level. *See id.* § 40102(20). NVOCCs can also enter into service-contract-style arrangements between themselves. *See* 46 C.F.R. §§ 531.1 *et seq.*

In addition to ocean shipping, both VOCCs and NVOCCs sometimes contract to carry cargo overland. Carriage by truck or other means either to or from a port—that is, for the non-ocean portion of the carriage—is referred to as "inland carriage" or "drayage." Carriage that includes both an inland and an ocean move is called "through carriage" or "through transport." *See* 46 U.S.C. § 40102(25). Because VOCCs and NVOCCs can carry cargo over both land and water, they may

1. On December 7, 2012, the Court consolidated Case Nos. 10–cv–5591–SC and 11–cv– 2861–SC for trial. This Order cites to the latter case's docket.

offer carriage from port to port, from "door to door" (that is, from a shipment's inland point of origin to its inland destination), or in combinations thereof.

Plaintiff MOL is a VOCC. All the named Defendants are NVOCCs. The claims and allegations pertinent to the motion at bar relate to shipments MOL undertook from southern China to the United States on behalf of AGL, as well as Defendants Sea-Master Logistics, Inc. ("SeaMaster") and Summit Logistics International, Inc. ("Summit"). *See generally* SAC ¶¶ 20–44.[2] MOL alleges that Defendants, individually and in conspiracy with each other, misrepresented the points of origin and/or delivery for thousands of shipments, that MOL was obliged to pay for the inland carriage for these shipments, and that the inaccurate representations caused MOL to overpay for trucking moves that either never occurred or were shorter than represented. *See id.* ¶¶ 24–25.

MOL alleges wrongdoing in both China and the United States. In China, numerous shipments allegedly were represented to have originated in Shenzhen when they actually originated, for contractual purposes, at the port of egress.[3] *Id.* ¶ 24. The parties refer to this as the "Shenzhen trucking" scheme or arrangement, as will the Court. In the United States, numerous shipments allegedly were represented to require delivery further away than the actual delivery address. *Id.* ¶ 25. MOL alleges that AGL used a company called Expedited to make these deliveries. *Id.* ¶ 27. AGL denies wrongdoing.

It is undisputed that, for at least 600 of the challenged shipments, AGL was the consignee or "notify party," while SeaMaster was the shipper with respect to MOL. Minck Decl. ¶ 5.[4] For these shipments, a U.S. buyer would hire AGL to move goods (for example, furniture) from their place of manufacture in China to the buyer's facility in the United States. *See* Briles Dep. 23:10–23. AGL, in turn, had a Sales Agency and Destination Agent Agreement with SeaMaster, under which AGL, as "sales" or "destination agent," would secure shipments for SeaMaster and SeaMaster would arrange carriage for those shipments from China to the United States under its (that is, SeaMaster's) service contract with MOL or another VOCC. *See* Briles Dep. 30:2–4; Rosenberg Dep. 65:10–16; Pl.'s Ex. 143 (Sales Agency and Destination Agent Agreement ("Agr.")). Sea-Master and AGL's Agreement identifies SeaMaster as the principal in their relationship, *see* Agr., but the parties sometimes refer to SeaMaster as the "overseas agent," *see, e.g.,* Briles Dep. 44:13–24, apparently in contrast to AGL's role as destination (that is, domestic) agent. Nearly all of AGL's customers—99 percent—ordered "FOB port" service, meaning that

---

**2.** On December 7, 2012, the Court denied MOL's motion to file a Third Amended Complaint. ECF No. 160. Hence, Plaintiff's operative pleading is the Second Amended Complaint. ECF No. 72 ("SAC"). The SAC names additional defendants and asserts other claims against non-AGL parties, but those claims and allegations do not bear on AGL's motion.

**3.** The parties sometimes refer to a port as the "container yard" or "CY."

**4.** Warrin Minck (a senior internal auditor for MOL's American division), Benjamin I. Fink (counsel for AGL), and Conte C. Cicala (counsel for MOL) submitted declarations in connection with the motion at bar. ECF Nos. 123–1 ("Fink Decl."), 134 ("Minck Decl."), 135 ("Cicala Decl."). Among other materials, Fink and Cicala both included excerpts of transcripts of the depositions of Chad Rosenberg (AGL's chief executive officer) and James Joseph Briles III (AGL's chief operating officer). Fink Decl. Ex. A–1, Cicala Decl. Ex. B ("Rosenberg Dep."); Fink Decl. Ex. A–2, Cicala Decl. Ex. A ("Briles Dep."). Cicala included as part of the Rosenberg Deposition excerpt various exhibits referenced in that deposition, labeled as "Plaintiff's Exhibits."

the Chinese seller was responsible for delivery of the goods to the Chinese port, and AGL's customer (hence, AGL) only took possession of the goods once they were loaded on the ship in China. *See* Briles Dep. 23:10–11; Rosenberg Dep. 32:12–14.

AGL's booking of a shipment under the foregoing arrangement would commence when the Chinese seller notified SeaMaster—not AGL—that goods ordered by AGL's customer, the U.S. buyer, were ready for shipment. *See* Briles Dep. 44:13–45:20. Every day, SeaMaster's offices in China would prepare and send to AGL via email a spreadsheet showing new bookings, called the "daily routing guide." *Id.* The daily routing guide contained information pertaining to the shipment's contents, destination, and port of departure, as well as a recommended routing method and, usually, applicable rates. *Id.* 43:15–18, 44:13–24, 46:11–47:7. However, with one exception not relevant here, it did not contain information about the shipment's inland point of origin, i.e., the location of the Chinese manufacturer. *Id.* 47:8–20, 65:20–66:–8.

Inland origin information was contained, however, in bills of lading for the shipments. Two sets of bills of lading were created for each shipment. As VOCC, MOL issued a "master" bill of lading which would be provided to MOL's customers, the NVOCCs—that is, SeaMaster and AGL. *See* Rosenberg Dep. 102:3–103:5. SeaMaster issued a "house" bill of lading which MOL would not receive. *See id.*; Minck Decl. ¶ 8. Both sets of bills of lading refer to the shipment's point of origin as the "place of receipt" and the shipment's final destination as the "place of delivery." *E.g.*, Pl.'s Ex. 145. For the shipments involved in the alleged Shenzhen trucking arrangement, the master bill of lading would indicate a place of receipt of "Shenzhen—Door," while the house bill of lading

would show the place of receipt to be the Chinese port (for instance, Yantian). *See* Briles Dep. 67:1–7, 68:16–69:17; Rosenberg Dep. 102:3–103:5; *see also,* e.g., Pl.'s Exs. 145–48 (examples of MOL's master and SeaMaster's house bills of lading). As stated above, MOL declares that its records list AGL as consignee on at least 600 such shipments. Minck Decl. ¶ 5. AGL received copies of both sets of bills of lading by Federal Express or a similar delivery service. Briles Dep. 53:11–54:4.

The SAC asserts the following five claims against AGL (as well as SeaMaster and Summit): (1) intentional misrepresentation and (2) conspiracy to intentionally misrepresent, or, in the alternative, (3) negligent misrepresentation; and civil RICO violations under (4) 18 U.S.C. § 1962(c) and (5) 18 U.S.C. § 1962(d). AGL's motion for partial summary judgment seeks judgment in its favor on three different grounds. First, AGL seeks dismissal of all claims to the extent they are premised on AGL's alleged misrepresentations made in the course of the alleged Shenzhen trucking scheme. Second, AGL seeks dismissal of all claims premised on AGL's alleged participation in a conspiracy. Third, AGL seeks dismissal of Plaintiff's RICO claims. *See* Mot. at 3. AGL does not move for summary judgment with respect to allegedly misrouted U.S. inland carriage.

## III. *LEGAL STANDARD*

Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment should be granted if the evidence would require a directed verdict for the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A moving party without the ultimate burden of per-

suasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir.2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.* "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Id.* Summary judgment, however, is inappropriate "for resolving claims that depend on credibility determinations." *Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir.2005).

## IV. DISCUSSION

### A. Misrepresentation

#### 1. Intentional Misrepresentation

■ Under California law,[5] the elements of intentional misrepresentation (that is, fraud) are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 990, 22 Cal.Rptr.3d 352, 102 P.3d 268 (Cal. 2004) (quoting *Lazar v. Superior Court*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d 981 (Cal.1996)).

■ AGL argues that there is no evidence that it ever made false representations to MOL about inland trucking movements, concealed any facts about them, or even knew about such movements, and that therefore MOL cannot prove the element of scienter. AGL emphasizes the testimony of its executives Rosenberg and Briles, both of whom claim to have learned of the Shenzhen trucking arrangement only when this lawsuit was filed. Rosenberg Dep. 50:1–8, 104:4–7; Briles Dep. 67:14–19. AGL also offers the declaration of Jerry Huang, a SeaMaster executive, who asserts that he never discussed the Shenzhen trucking arrangement with anyone at AGL and that he "ha[s] no information that AGL learned of the [a]rrangement through AGL's business relationship with SeaMaster." Huang Decl. ¶¶ 3–4. AGL also points to Rosenberg and Briles's testimony to the effect that no one at AGL noticed the discrepancy between the master and house bills of lading or that MOL's master bill of lading stated the place of receipt to be an inland "door" rather than, as one would expect for FOB port service, the outgoing port. Rosenberg Dep. 102:11–103:5, 103:17–104:3; Briles Dep. 67:1–12.[6]

---

5. AGL acknowledges in a footnote that the parties have not briefed choice-of-law issues. Mot. at 11 n. 7. Both sides then proceed to argue MOL's non-federal claims using California law without further discussion of choice of law. The parties have thus acquiesced to the application of California law for the non-federal claims. *See Hatfield v. Halifax PLC*, 564 F.3d 1177, 1184 (9th Cir. 2009).

6. AGL also emphasizes deposition testimony by MOL's chief executive officer, Masaru Satose. Fink Decl. Ex. C ("Satose Dep."). AGL characterizes Satose as having "confirmed" that AGL was unaware of the Shenzhen trucking arrangement. Mot. at 8. Satose's testimony, however, merely evinces Satose's unfamiliarity with AGL. *See* Satose Dep. 170:4–7 (Satose stating "No" when asked if he is "familiar with AGL" or "know[s] anything about AGL"). As Satose concedes, he did not know whether AGL participated in trucking movements in China. *Id.* 172:16–19. That hardly "confirms" AGL's lack of participation. Satose's testimony neither implicates nor exonerates AGL.

■ The Court concludes that it cannot enter summary judgment for AGL on the basis of the denials of Briles, Huang, and Rosenberg because doing so would require the Court to make a determination of their credibility. "[S]ummary judgment is singularly inappropriate where credibility is at issue." *S.E.C. v. M & A W., Inc.*, 538 F.3d 1043, 1055 (9th Cir.2008) (quoting *S.E.C. v. Koracorp Indus., Inc.*, 575 F.2d 692, 699 (9th Cir.1978)). Such issues are appropriately resolved only after a trial or evidentiary hearing. *Id.* Here, the Court has no reason to doubt the credibility of Briles, Huang, or Rosenberg, but neither has the Court had an opportunity to examine them and gauge their veracity.

AGL also argues that it is entitled to summary judgment on MOL's fraud claim because AGL never made *any* affirmative representation to MOL regarding the place of receipt for shipments implicated in the Shenzhen trucking arrangement; thus, AGL argues, MOL cannot establish the element of misrepresentation. MOL indicates, however, that it rests its fraud claim on a theory of nondisclosure and concealment, specifically, AGL's nondisclosure and alleged concealment of the discrepancy in the two sets of bills of lading. Opp'n at 8–9.

■ Ordinarily, nondisclosures are not actionable under California law unless a confidential or fiduciary relationship between the parties gives rise to an affirmative duty to disclose. *See Goodman v. Kennedy*, 18 Cal.3d 335, 346–47, 134 Cal. Rptr. 375, 556 P.2d 737 (Cal.1976); 5 Witkin, Summary 10th (2005) Torts § 794. However, even in the absence of such a relationship, a duty to disclose can arise "when the defendant ha[s] exclusive knowledge of material facts not known to the plaintiff" or "when the defendant actively conceals a material fact from the plaintiff." *Jones v. ConocoPhillips*, 198 Cal.App.4th 1187, 1199, 130 Cal.Rptr.3d 571 (2011), *re-view denied* (Nov. 30, 2011) (alteration in original) (internal quotation marks omitted). Neither party disputes that AGL had both sets of bills of lading, that MOL had only one, and that AGL did not affirmatively notify MOL of the discrepancy between the two. MOL frames this nondisclosure as an act of concealment or suppression. SAC ¶ 64; Opp'n at 8, 8 n. 6. Under California law, the elements of fraudulent concealment are:

(1) the defendant concealed a material fact; the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant concealed or suppressed the fact with an intent to defraud; (4) the plaintiff was unaware of the fact and would have acted if he or she had known about it; and (5) the concealment caused the plaintiff to sustain damage.

*Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1156 n. 3 (9th Cir.2000).

MOL identifies AGL's false positive assertion as an assertion that the shipments originated from "Shenzhen—Door" when in fact they did not, and AGL's concealment as its failure to disclose that the drayage in China consisted of container yard moves rather than shipments from inland factories. Uncontroverted evidence strongly suggests that the daily routing guide received by AGL from SeaMaster does not identify the shipment's point of origin. Briles Dep. 47:8–20, 65:20–66:–8. Thus, the claim of nondisclosure and concealment must be premised on the mismatched bills of lading.

The Court observes that the fact that the bills of lading contained a mismatch may not be enough to establish AGL's actual knowledge of the mismatch. AGL, after all, denies having read the bills of lading and offers testimony that it had no reason to do so. Briles Dep. 68:16–69:7; Rosenberg Dep. 103:17–104:3. MOL suggests that constructive knowledge of the

bills of ladings' contents may be imputed to AGL.[7] However, the leading California cases addressing the "exclusive knowledge" species of nondisclosure appear to involve actual knowledge of the undisclosed facts, as opposed to merely constructive knowledge.[8] MOL has not cited any case standing for the proposition that a party has a duty to disclose facts of which it has only constructive knowledge. Neither does MOL say how constructive knowledge could satisfy California law's requirement that the defendant know the materiality of the omitted fact. *See Goodman,* 18 Cal.3d at 347, 134 Cal.Rptr. 375, 556 P.2d 737.

MOL comes closer to the mark when it cites regulations promulgated by the Federal Maritime Commission to implement provisions of the Shipping Act. *See* Opp'n at 5–6. As MOL notes, these regulations provide, in pertinent part:

> (e) False or fraudulent claims, false information. No licensee shall prepare or file or assist in the preparation or filing of any claim, affidavit, letter of indemnity, or other paper or document concerning an ocean transportation intermediary transaction which it has *reason to believe* is false or fraudulent, nor shall any such licensee *knowingly* impart to a principal, shipper, common carrier or other person, false information relative to any ocean transportation intermediary transaction.

> (f) Errors and omissions of the principal or shipper. A licensee who has *reason to believe* that its principal or shipper has not, with respect to a shipment to be handled by such licensee, complied with the laws of the United States, or has made any error or misrepresentation in, or omission from, any export declaration, *bill of lading,* affidavit, or other document which the principal or shipper executes in connection with such shipment, shall advise its principal or shipper promptly of the suspected noncompliance, error, misrepresentation or omission, and shall decline to participate in any transaction involving such document until the matter is properly and lawfully resolved.

46 C.F.R. § 515.31(e)-(f) (emphases added). These regulations put licensees like AGL under an affirmative obligation to refrain from preparing documents containing false information (provided the licensee has reason to believe it is false) and refrain from imparting false information (provided that is done knowingly), as well as to point out errors, misrepresentations, or omissions in, inter alia, bills of lading (provided the licensee has reason to believe the document contains such inaccuracies). AGL's response appears to be that it did not know, and had no reason to know, of any falsities or omissions in the bills of lading. However, that position rests on Briles and Rosenberg's denials that AGL read or

---

**7.** *See* Opp'n at 9–10 (stating that "accurate information reflecting both the origin and destination of each shipment was contained in the NVOCC house bill of lading" and concluding that "AGL clearly knew that the 'Shenzhen door' place of receipt reflected in MOL's bill of lading was false"); *see also id.* at 16–18 (arguing, in the context of MOL's negligent misrepresentation claim, that AGL had constructive knowledge of the contents of the bills of lading).

**8.** *See De Spirito v. Andrews,* 151 Cal.App.2d 126, 130–31, 311 P.2d 173 (Cal.Ct.App.1957);

*Lingsch v. Savage,* 213 Cal.App.2d 729, 735–37, 29 Cal.Rptr. 201 (Cal.Ct.App.1963); *Massei v. Lettunich,* 248 Cal.App.2d 68, 72–73, 56 Cal.Rptr. 232 (Cal.Ct.App.1967); *Goodman v. Kennedy,* 18 Cal.3d 335, 347–48, 134 Cal. Rptr. 375, 556 P.2d 737 (Cal.1976); *Wells v. John Hancock Mut. Life Ins. Co.,* 85 Cal. App.3d 66, 70–73, 149 Cal.Rptr. 171 (Cal.Ct. App.1978); *Magpali v. Farmers Group, Inc.,* 48 Cal.App.4th 471, 482, 55 Cal.Rptr.2d 225 (Cal.Ct.App.1996); *see also* 5 Witkin, Summary 10th (2005) Torts § 796.

knew the contents of the bills of lading. As explained above, the Court cannot credit those denials without impermissibly making a credibility determination.

The parties raise a number of other, ancillary arguments and matters in connection with this claim, but the Court need not address them.[9] AGL's motion for summary judgment on this claim is ultimately premised on the credibility of Briles and Rosenberg's denials and, because the Court cannot rely on credibility determinations to enter summary judgment, the Court DENIES AGL's motion for partial summary judgment as to MOL's claim for intentional misrepresentation in connection with the Shenzhen trucking arrangement.

### 2. Negligent Misrepresentation

■ Negligent misrepresentation differs from fraud in that it "does not require scienter or intent to defraud." See *Small v. Fritz Companies, Inc.*, 30 Cal.4th 167, 173–74, 132 Cal.Rptr.2d 490, 65 P.3d 1255 (Cal.2003) (quoting *Gagne v. Bertran*, 43 Cal.2d 481, 487–488, 275 P.2d 15 (Cal. 1954)). Negligent misrepresentation

> encompasses "[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true" and "[t] he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true."

*Id.* at 174, 132 Cal.Rptr.2d 490, 65 P.3d 1255 (quoting Cal. Civ.Code §§ 1710(2), 1572(2)) (alterations in original; citations omitted). In California, negligent misrepresentation further differs from intentional misrepresentation in that, while certain nondisclosures may support a claim for intentional misrepresentation, a negligent misrepresentation claim requires a "positive assertion," and hence "omissions"—that is, nondisclosures—cannot give rise to liability for negligent misrepresentation. *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App.4th 572, 596, 135 Cal.Rptr.3d 116 (Cal. Ct.App.2011), *reh'g denied* (Dec. 30, 2011), *review withdrawn* (Mar. 14, 2012); *Wilson v. Century 21 Great W. Realty*, 15 Cal. App.4th 298, 306, 18 Cal.Rptr.2d 779 (Cal. Ct.App.1993). This difference makes an admittedly counterintuitive result possible under California law: The same failure to disclose may support a claim for intentional misrepresentation but not negligent misrepresentation.[10]

■ In the case at bar, MOL argues that language in MOL's bill of lading and waybills resulted in AGL's being liable in tort for the truth of the information contained in those bills of lading. The argument relies on three provisions in MOL's combined transport bill of lading. First, the bill of lading defines "Merchant" to include the "Consignee" of goods shipped under that bill. Minck Decl. ¶ 9, Ex. A at 1. There is no dispute that AGL was listed

---

9. Among the ancillary matters raised by the parties is an arbitration award first discussed by MOL in its opposition, and further discussed by AGL in its reply. MOL objected to AGL's discussion of the arbitration award on the ground that AGL should not be permitted to raise new arguments on reply. ECF No. 151. AGL filed a response to the objection. ECF No. 162. Because the Court disposes of the instant motion without needing to refer to the matters that are subject of MOL's objection (matters that the Court finds largely irrel-

evant), the objection is moot and hence OVERRULED.

10. *Cf. Lopez*, 201 Cal.App.4th at 596, 135 Cal. Rptr.3d 116 (noting that claim for negligent misrepresentation cannot be based on an omission, but claim for intentional misrepresentation can); *Oakland Raiders v. Oakland–Alameda Cnty. Coliseum, Inc.*, 144 Cal. App.4th 1175, 1184, 51 Cal.Rptr.3d 144 (Cal. Ct.App.2006) (torts of intentional and negligent misrepresentation are "separate and distinct").

as the consignee and notify party on many of the shipments implicated in the Shenzhen trucking arrangement. Second, the bill of lading states that that "[a]ll of the [p]ersons coming within the definition of Merchant . . . shall be jointly and severally liable to the Carrier for the due fulfillment of all obligations of the Merchant in this Bill of Lading." Minck Decl. ¶ 9, Ex. A at 6. Third, the bill of lading states that the "Merchant warrants to the Carrier [i.e., to MOL] that the particulars relating to the Goods as set out overleaf have been checked by the Merchant on this Bill of Lading and that such particulars and any other particulars furnished by or on behalf of the Shipper are accurate and correct." Minck Decl. ¶ 9, Ex. A at 6–7. In summary, the bill of lading purports to impose joint and several liability on non-shippers like AGL for representations made by shippers like SeaMaster. MOL asks the Court to conclude that this language makes AGL responsible for the false "positive assertions" of fact that made their way into the master bills of lading.

MOL cites a number of cases addressing the binding effect of bills of lading on consignees like AGL, Opp'n at 5 n. 4, but the Court finds them inapplicable to the matter of tort liability. The cases speak to different legal issues than the one presented here, for instance, whether language like that contained in MOL's waybills can support joint and several liability for unpaid freight charges, whether the shipping rates set forth in tariffs are enforceable in contract, or whether the terms in a short-form bill of lading may incorporate the terms of a long-form bill of lading. That

is, all of the cases address points of contract law. The Court finds no support in those cases, however, for the proposition that the language in MOL's bill of lading can result in joint and several liability in tort. Neither has MOL marshaled any authority to demonstrate that a failure to comply with the Federal Maritime Commission regulations discussed in the previous section can support liability in tort (assuming for the sake of argument that AGL did so fail).

In the absence of any evidence that AGL itself positively but inaccurately asserted the place of receipt for the shipments implicated in the Shenzhen trucking arrangement, California law entitles AGL to summary judgment on MOL's negligent misrepresentation claim.[11]

Accordingly, AGL's motion for summary judgment is GRANTED with respect to the negligent misrepresentation claim.[12]

## B. *Conspiracy*

 In addition to its misrepresentation claims against AGL, MOL also asserts a claim for conspiring to commit fraud. SAC ¶¶ 68–73. MOL names Seamaster and Summit in this claim, in addition to AGL. *Id.* Under California law, civil "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510–11, 28 Cal.Rptr.2d 475, 869 P.2d 454 (Cal.1994). Thus, a claim for civil conspir-

---

11. The Court held to the contrary in *Mitsui O.S.K. Lines, Ltd. v. Allied Transp. Sys. (USA), Inc.*, 10–5586 SC, 2011 WL 5861642, at *5–6 (N.D.Cal. Nov. 22, 2011). In that case, however, the moving party did not distinguish between intentional and negligent misrepresentation.

12. In the absence of evidence of any positive assertion by AGL, the Court need not, and does not, reach MOL's argument that the rate AGL received on the shipments implicated in the Shenzhen trucking arrangement should have alerted it that it was getting a deal "too good to be true." *See* Opp'n at 18.

acy rests on the "commission of an actual tort." *Id.* at 511, 28 Cal.Rptr.2d 475, 869 P.2d 454. Assuming such a tort occurs, the elements of civil conspiracy under California law are: "[1] formation and operation of the conspiracy, [2] wrongful act or acts done pursuant thereto, and [3] damage." *Cnty. of Marin v. Deloitte Consulting LLP,* 836 F.Supp.2d 1030, 1045 (N.D.Cal.2011) (citing *Mosier v. S. California Physicians Ins. Exch.,* 63 Cal.App.4th 1022, 1048, 74 Cal.Rptr.2d 550 (Cal.Ct.App. 1998)).

Here, AGL seeks summary judgment as to MOL's claim that it conspired in the Shenzhen trucking fraud on the ground that MOL has produced no evidence that AGL knew of or participated in such a conspiracy. MOL responds by citing to excerpts of the deposition testimony of Jerry Huang, the SeaMaster executive. Cicala Decl. Ex. C. ("Huang Dep.") 226:4–237:11. In his deposition, Huang appeared to admit to knowledge of the Shenzhen trucking arrangement. However, although Huang discussed in his deposition various interactions between Summit, Seamaster, an MOL employee named Michael Yip (whom MOL claims participated in the fraudulent scheme), and a trucking company called Rainbow, Huang never mentioned AGL. MOL asks the Court to read Huang's deposition testimony as an admission of the existence of a conspiracy to defraud MOL and then to infer from AGL's identification on bills of lading as consignee and notify party that AGL knew of and participated in the conspiracy. MOL is entitled to favorable reasonable inferences, but that is a leap too far. Essentially, AGL carried its initial burden of production by showing that MOL lacks sufficient evidence to establish the "knowledge and participation" element of its conspiracy claim. *See Nissan Fire & Marine,* 210 F.3d at 1102. MOL therefore must "produce enough evidence to create a genuine issue of material fact." *Id.* at 1103.

The only evidence MOL has produced as to AGL's awareness of the conspiracy is evidence which does not mention AGL at all. At best, MOL produces evidence of a conspiracy involving similarly situated, but different, parties. This mere "scintilla" of evidence is not enough to avoid summary judgment. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

Accordingly, the Court GRANTS AGL's motion for summary judgment as to MOL's claim for conspiracy to commit fraud in connection with the Shenzhen trucking scheme.

### C. *RICO*

The civil RICO statute provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). "To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Odom v. Microsoft Corp.,* 486 F.3d 541, 547 (9th Cir.2007) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)).

Though the parties submit arguments pertaining to each element of MOL's § 1962(c) claim, the Court concludes that it need proceed no further than the first element, "conduct." "The conduct requirement under § 1962(c) means that '[i]n order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs.'" *Eclectic Properties E., LLC v. The Marcus & Millichap Co.,* C–09–00511 RMW, 2012 WL 713289,

at *6 (N.D.Cal. Mar. 5, 2012) (alteration in original) (quoting *Reves v. Ernst & Young,* 507 U.S. 170, 179, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993)). Under this "operation and management" test, first articulated in *Reves,* "[s]imply performing services for the enterprise does not rise to the level of direction, whether one is 'inside' or 'outside,'" that is, part or not part of the enterprise. *Walter v. Drayson,* 538 F.3d 1244, 1249 (9th Cir.2008).

Here, MOL offers insufficient evidence to raise a triable issue of material fact as to whether AGL had "some part in directing" the enterprise. MOL points to "the historical relationship of the participants in the [alleged] fraudulent activity," and submits evidence that Huang and Rosenberg, now executives of SeaMaster and AGL, respectively, had business dealings from 1998 to 2006, as executives of companies called Hecny and Global Link, respectively. Opp'n at 20 (citing Rosenberg Dep. 12:11–13:19, 14:4–8). MOL describes AGL as having hired SeaMaster in 2008 to perform substantially the same role that Hecny performed for Global Link. *Id.* at 20–21 (citing Rosenberg Dep. 43:25–44:12; Pl.'s Ex. 143).[13] MOL then describes a "parallel" enterprise involving Defendants Kesco and Summit, but not AGL. *Id.* at 21. MOL notes that SeaMaster is part of the Summit group of companies. *Id.*

None of this explains how AGL has "some part in directing" the enterprise's affairs. At most, it suggests that AGL may have been part of an enterprise. But merely being part of the enterprise is not enough. *See Walter,* 538 F.3d at 1249. Even providing services that benefit the enterprise is not enough. *See Univ. of Maryland at Baltimore v. Peat, Marwick,*

*Main & Co.,* 996 F.2d 1534, 1539 (3d Cir. 1993); *see also Baumer v. Pachl,* 8 F.3d 1341, 1345 (9th Cir.1993) (citing *Univ. of Maryland* with approval). In short, even if the Court assumes that AGL participated in the asserted RICO enterprise, MOL offers no evidence that AGL had any part in operating or managing it. In considering what activities satisfy *Reves's* "operation and management" test, the Ninth Circuit has looked at whether a party: gives or takes direction in the enterprise; "occup[ies] a position in the chain of command" of the enterprise; "knowingly implements decisions" of the enterprise; or is "indispensable to achievement of the enterprise's goal." *See Walter,* 538 F.3d at 1249. MOL offers no evidence on these points. MOL relies on evidence of the existence of a longstanding business relationship between a principal of AGL and a principal of SeaMaster. That is not enough to establish RICO "conduct." The considerations raised in the Court's discussion of MOL's conspiracy claim also apply here. *See* Section IV.B *supra.* MOL's evidence suggests, at best, a parallel enterprise involving companies similarly situated to, but different from, AGL.

MOL makes much of the conduct of Global Link, a now-defunct entity formerly helmed by Rosenberg which is not a party to this lawsuit. *See* Opp'n at 13–14. MOL asserts that evidence pertaining to Global Link is admissible under Federal Rule of Evidence 404(b)(2) to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake[,] or lack of accident." Opp'n at 14 n. 10. Assuming without deciding that (1) the evidence would be admissible for that purpose and (2) that the evidence establishes

---

**13.** Rosenberg himself, however, did not come to work for AGL until 2009 and thus was not employed by AGL at the time AGL hired SeaMaster through Huang, as MOL itself notes. Opp'n at 14 (citing Rosenberg Dep. 41:18–

25). MOL asserts, without citing to evidence, that "Global Link's former management team, now operating AGL, clearly continued [Global Link's] fraudulent schemes relating to MOL shipments." *Id.*

that Rosenberg used Global Link to commit RICO violations against MOL, it still would not show that Rosenberg or AGL directed any RICO enterprise in this case.

MOL cites two out-of-circuit cases for the proposition that "[i]t is not necessary to prove that every member of the enterprise participated in or knew about all of its activities." Opp'n at 20 (internal quotation marks omitted) (citing *United States v. Cagnina*, 697 F.2d 915, 922 (11th Cir. 1983); *United States v. Rastelli*, 870 F.2d 822, 827–28 (2d Cir.1989)). That proposition holds in the situations where it applies, but this is not one of those situations. The cited discussions in *Cagnina* dealt with the requirements for alleging the existence of an enterprise—a separate consideration from showing "conduct" under *Reves's* "operation and management" test. *Rastelli* addressed what the government must prove in a criminal RICO case to prove a RICO conspiracy (as compared to the non-conspiracy civil claim arising under § 1962(c)). Neither case addresses the issue of "conduct" that is relevant here.

In conclusion, MOL has not carried its burden of showing a triable issue of material fact as to the "conduct" requirement of its § 1962(c) claim. Accordingly, the Court GRANTS AGL's motion for partial summary judgment as to that claim.

MOL also asserts a § 1962(d) claim against, inter alia, AGL. Section 1962(d) simply proscribes conspiring to commit RICO violations and thus depends on the viability of an underlying RICO claim. *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir.2000). None being present here, AGL is entitled to summary judgment as to MOL's § 1962(d) claim. The absence of evidence of conspiracy also supports entry of summary judgment on this claim. *See* Section IV.B *supra*. Accordingly, the Court GRANTS AGL's mo-

tion for partial summary judgment as to MOL's § 1962(d) claim.

## V. *CONCLUSION*

For the foregoing reasons, the Court PARTIALLY GRANTS and PARTIALLY DENIES the motion of Defendant American Global Logistics, LLC for partial summary judgment. Plaintiff Mitsui O.S.K. Lines, Ltd.'s claims for negligent misrepresentation, conspiracy to intentionally misrepresent, civil RICO violations, and civil RICO conspiracy are DISMISSED as to AGL. Plaintiff's claim for intentional misrepresentation remains undisturbed as to AGL.

IT IS SO ORDERED.